SHEARER, Appellant, vs. PRINGLE, imp., Respondent.

*November 14—December 9, 1930.*

166

For the appellant there were briefs by *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, and oral argument by *Otto A. Oestreich.*

For the respondent there was a brief by *Nolan, Dougherty, Grubb & Ryan* of Janesville, and oral argument by *Paul N. Grubb.*

NELSON, J. The plaintiff contends that the court erred in admitting testimony varying the terms of the extension agreement and in rendering judgment decreeing a reformation of said instrument and dismissing the complaint as to defendant Pringle.

As will appear from the statement of facts, there was no dispute as to the material facts upon which reformation was decreed. As we view this case, we deem it unnecessary to discuss the question as to whether the parol-evidence rule in connection with the written instrument was violated. It is our opinion that the facts in this case bring it very clearly within the rules of law applicable to the reformation of instruments and clearly justified the trial court in reforming the agreement. There is no dispute between Olson and Mrs. Pringle as to what happened at the time of signing the extension agreement nor as to what the actual agreement

was. Mrs. Pringle never agreed to bind herself individually, positively refused to enter into any such contract, and clearly intended to bind herself as administratrix only. There is no dispute between Olson and Mrs. Pringle as to these matters. This being true, it seems clear that the well established law relating to the reformation of instruments is applicable to the situation in this case.

It is elementary that courts of equity have jurisdiction to relieve parties against the consequences of mutual mistake of fact. In this case, however, it is not entirely clear that the mutual mistake was one of fact. It was clearly a mutual mistake. Both parties intended, as a matter of fact, by having Mrs. Pringle sign as administratrix, that she would not be bound individually. Neither of them realized that the language in the body of the contract was of any particular consequence in view of the signing of the agreement by her as administratrix. What they intended to do is undisputed.

In the earlier cases courts of equity had great difficulty in deciding whether or not equitable relief by way of reformation could be granted where the mistake was one of law. The early rule was very positive that equity will not relieve against mistake of law. 21 Corp. Jur. p. 93. But even in courts which adhere to that rule, such relief has frequently been given as stated in 21 Corp. Jur. p. 95: "While the rule has been too often declared to be ignored, it seems to be founded upon a misconception of the maxim to which it is traced, and the efforts of the courts to engraft exceptions have led practically in many cases to an annulment of the rule itself." The modern rule is well stated in *Hazard v. Warner*, 122 Wash. 687, 211 Pac. 732, 31 A. L. R. 381, 383, where the court says:

"Many authorities are cited pro and con upon the question here presented, and, while not greatly differing in principle, the application so differs as to result in hopeless con-

fusion, and render a review of the authorities wholely value-less. The generally accepted modern rule is well stated in 23 Ruling Case Law at page 326, as follows: 'Many well-considered modern cases show a strong tendency to adopt the position that the main object of equitable jurisdiction should be to effectuate the intentions of the parties to the instrument in question, and that any mistake made by them which would defeat such intentions should be corrected in equity for the purpose of putting into effect such intentions, whether the mistake in question be one of law or of fact. And this is so although the parties knew what words were employed and their ordinary meaning.' "

The following Wisconsin cases clearly show that the decisions of this court are in harmony with the modern rule: In *Lardner v. Williams,* 98 Wis. 514, 521, 74 N. W. 346, Mr. Justice Winslow, speaking for the court, said:

"In the present case it was conclusively shown, not only by the circumstances but by direct evidence, that both mortgagor and mortgagees intended and agreed that the fee of the land should be mortgaged, and not the mere life estate, and that they knew that the power to mortgage came from the provisions of the will, and that they supposed that a mortgage in usual form would be sufficient to make a valid mortgage on the fee under the will. No lawyer was consulted, but one of the mortgagees drew the papers, and did not suppose it necessary to recite the power, but thought an ordinary mortgage would be sufficient. If a court of equity could not relieve the mortgagee under such circumstances, and make the agreement what it was intended to be, it would be a reproach to the law."

In *Komula v. General Acc., F. & L. Assur. Corp.* 165 Wis. 520, 523, 162 N. W. 919, Mr. Justice Rosenberry said:

"It is urged that a court of equity cannot reform a contract so as to work a substitution of parties. Under the facts in this case we are of the opinion that this rule has no application here. There was no attempt to make a new contract or to substitute one party for another, but to make

the contract speak the truth and set forth the contract actually made. There was but one contract made, and under the findings of the court that was the contract made by John Komula Company. The court has ample power to compel the reformation of the contract so as to correct a misnomer, and in so doing it does not make a new contract or substitute one party for another."

Again, in *Rowell v. Smith,* 123 Wis. 510, 524, 102 N. W. 1, it is said:

"The point is made that if there was a mistake in reducing the verbal agreement to guaranty the notes to writing, it was one of law and hence irremediable. A mistake of law as well as of fact may, in some circumstances, be remedied. The general statement often indulged in, that equity may relieve one from the consequences of a mutual mistake of fact but not from a mistake of law, is very misleading. Error as to the sufficiency of language to put in legal form a transaction upon which the minds of two parties have met, may be as effectually dealt with as one purely of fact. Upon due consideration in *Wis. M. & F. Ins. Co. Bank v. Mann, supra* (100 Wis. 596, 76 N. W. 777), the rule was stated thus: 'A mistake in the contract itself, springing from ignorance of the law, is one thing, and mistake in the legal meaning attributable to the words used to express a contract is quite another. . . . Where there is a mutual mistake, either of fact in making a contract or of law or fact in the reduction of the contract to writing, the person injured thereby may have it reformed in equity in accordance with the truth, in the absence of facts or circumstances constituting a waiver of the remedy or an estoppel to the assertion of it.' "

The holdings in the following cases are substantially the same: *Hoberg v. John Hoberg Co.* 170 Wis. 50, 173 N. W. 639, 952; *Broadbent v. Hutter,* 163 Wis. 380, 157 N. W. 1095; *Luedtke v. Luedtke,* 181 Wis. 471, 195 N. W. 382; *Moehlenpah v. Mayhew,* 138 Wis. 561, 119 N. W. 826; *Petfalski v. Winkel Garage Co.* 190 Wis. 64, 208 N. W. 893; *Rist v. Porter,* 192 Wis. 218, 212 N. W. 275.

The case of *Griswold v. Hazard,* 141 U. S. 260, 11 Sup. Ct. 972, is one clearly applicable to the situation in this action. In that case it was intended to make a bail bond, but the language used was that the defendant would perform the orders of the court, and it was sought to hold the bondsmen not for his appearance but to the performance of the judgment. Mr. Justice HARLAN, speaking for the court, at page 283 (11 Sup. Ct. 979) said:

"We are of the opinion that, although the condition of the bond in question was that Durant should 'abide and perform the orders and decrees' of the court in the suit in which it was given, all the parties, according to the decided preponderance of evidence, intended it, at the time, as an instrument binding the sureties for the appearance of the principal so as to be amenable to the process and decrees of the court, upon default in which, and not before, were they to be liable to pay the penalty. If the bond means, in law, more than that,—and counsel in this court agree that it does,—the case is one of a mutual mistake, clearly established, as to the legal effect of the instrument. There was no mistake as to the mere words of the bond; for it was drawn by one of Hazard's attorneys, and was read by Griswold before signing it. But, according to the great weight of the evidence, there was a mistake, on both sides, as to the legal import of the terms employed to give effect to the mutual agreement. In short, the instrument does not express the thought and intention which the parties had at the time of its execution. And this mistake was attended by circumstances that render it inequitable for the obligees in the bond to take advantage of it. The instrument was drawn by one of Hazard's attorneys, and was presented and accepted as embodying the agreement previously reached. Griswold was unskilled in the law, and took the word 'perform' as implying performance in the sense of Durant's becoming amenable to the process of the court. He had no reason—unless the recollection of Gray, Durant, Van Zandt, and himself as to what occurred is wholly at fault—to doubt that the bond expressed the real agreement; especially if he heard Van Zandt's statement to Durant, when the latter was

about to sign the bond, that it 'was, in effect, a bail bond.' A court of equity ought not to allow that mistake, satisfactorily established and thus caused, to stand uncorrected, and thereby subject a surety to liability he did not intend to assume, and which, according to the decided preponderance of the evidence, there was at the time no purpose to impose upon him. While it is laid down that 'a mere mistake of law, stripped of all other circumstances, constitutes no ground for the reformation of written contracts,' yet 'the rule that an admitted or clearly established misapprehension of the law does create a basis for the interference of courts of equity, resting on discretion and to be exercised only in the most unquestionable and flagrant cases, is certainly more in consonance with the best-considered and best-reasoned cases upon this point, both English and American.' "

Under the circumstances in this case we deem it unimportant whether the mistake was one of fact or of law. As to the mistake there is no dispute. A court of equity ought not to allow that mistake, established without dispute, to subject Mrs. Pringle to a liability she did not intend to assume, and which, according to undisputed evidence, there was no agreement to impose upon her. We therefore conclude that the trial court was fully justified in decreeing reformation of the extension agreement and in dismissing the complaint of the plaintiff as against the defendant Nora Mae Pringle. In this view of the case it is unnecessary for us to discuss the other questions argued on this appeal. The judgment of the circuit court must therefore be affirmed.

*By the Court.*—Judgment affirmed.