Laura C. Bruchert, Nancy Bruchert
and Jerry Bruchert,
Plaintiffs,

v.

Tokio Marine &
Nichido Fire Insurance Company, Ltd.,
Defendant-Respondent,

Acuity, A Mutual Insurance Company,
Defendant-Appellant,

James R. Erickson, The Insurance Corporation
of New York, Joe Sanfelippo Cab Company,
Mahdi A. Haile, Covenant Healthcare System,
Inc., Wheaton Franciscan Services, Inc. and
Delta Dental Plan of Wisconsin, Inc., Defendants.

Court of Appeals

*No. 2006AP2113. Submitted on briefs May 1, 2007.*
*—Decided May 22, 2007.*

2007 WI App 156

(Also reported in 736 N.W.2d 234.)

672

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Sara H. Quirt* and *Christine M. Rice* of *Simpson & Deardorff, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Jeffrey S. Fertl* and *Carlos A. Ortiz* of *Hinshaw & Culbertson LLP*, Milwaukee.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. Acuity, A Mutual Insurance Company, appeals the final order entered by the trial court denying Acuity's motion for summary judgment. The trial court ruled that Acuity provided personal-liability coverage for an accident in which James R. Erickson was involved, even though Acuity had already cancelled the policy. The issue on this appeal is whether cancellation of an automobile insurance policy for the nonpayment of premiums ends personal-liability coverage for a leased car when proper notice of cancellation is given to the designated insured but not to the leasing company. We conclude that it does. Accordingly, we reverse.

## I.

¶ 2.   This appeal arises out of a car accident on February 17, 2002, between a taxi in which Laura C. Bruchert was a passenger and a car driven by Erickson. The car, a 2002 Mitsubishi Galant, was leased to Major League Sports under a December 8, 2001, lease agreement between Major League Sports and Mitsubishi Motors Credit of America. The parties agree that Charles T. Monfre owned Major League Sports and that Erickson was driving the car with Monfre's permission. The parties also agree that if the Acuity policy was in effect on February 17, 2002, it would have provided liability coverage to Erickson. Acuity contends that it validly cancelled the policy on February 7, 2002.

¶ 3.   The lease agreement between Mitsubishi Motors Credit and Major League Sports required Major League Sports to insure the Galant for the following minimum coverages:  (1) "Public liability for bodily injury or death to any one person for $100,000 and for any one occurrence for $300,000"; (2) "Property damage liability for $50,000"; (3) "Comprehensive, including fire

674

and theft for the Vehicle's actual value (payable in cash - not by a replacement vehicle)"; and (4) "Collision for the Vehicle's actual value (payable in cash - not by a replacement car)."

¶ 4. The lease agreement also obligated Major League Sports to ensure that the insurance policy "provide [Mitsubishi Motors Credit] with primary coverage as an additional insured" for the personal-liability and property-damage coverages, and to ensure that the insurance policy list Mitsubishi Motors Credit "as loss payee" in connection with the comprehensive and collision coverages. Additionally, the lease agreement obligated Major League Sports to ensure that the insurance policy required the insurance company to "provide [Mitsubishi Motors Credit] with 30 days' advance written notice of any cancellation of coverage." The lease agreement between Major League Sports and Mitsubishi Motors Credit was executed on behalf of Major League Sports by "Daniel Eggers," who is not otherwise described in the agreement.

¶ 5. The Acuity policy at issue on this appeal was issued to Monfre, whose address listed on the policy is the same as that listed for Major League Sports on the lease agreement with Mitsubishi Motors Credit. The policy covered four cars, including the Galant leased to Major League Sports by Mitsubishi Motors Credit. Monfre is designated as the policy's "Insured." Liability coverage under the Acuity policy is given to the designated "**You**" as well as "[a]ny person [who causes damage] while using **your insured car** with **your** permission." (Bolding in original.) "Car Damage Coverage" under the policy is to be paid "to **you** and any loss payee shown in the Declarations as interests may appear." (Bolding in original; uppercasing omitted.) "'**You**'" is defined by the policy as "mean[ing] the poli-

675

cyholder named in the Declarations and spouse if living in the same household." (Bolding in original.)

¶ 6. The policy identified Mitsubishi Motors Credit as a "Lienholder" on the car. Contrary to the obligation assumed by Major League Sports under its lease agreement with Mitsubishi Motors Credit, Monfre's Acuity policy did not designate Mitsubishi Motors Credit either as an "additional insured" in connection with the liability coverages or as a "loss payee" in connection with the comprehensive and collision coverages, or require that the insurance company give thirty days notice to Mitsubishi Motors Credit of any pending policy cancellation.

¶ 7. The Acuity policy provided that the policy would be cancelled if "**You** have failed to pay the premium when due." (Bolding in original.) The operative declarations page lists, as we have seen, "Charles T Monfre" as the "Insured" but does not separately name a "policyholder" using that term. None of the parties contends that Monfre is not the "'**You**'" to which the notice-of-cancellation provision refers.

¶ 8. Acuity cancelled the policy, effective February 7, 2002, because Monfre did not pay the requisite premiums. Timely notice was given to Monfre at the address listed on the policy. Acuity did not give notice of cancellation to Mitsubishi Motors Credit or to Major League Sports.

¶ 9. The Acuity policy reified the possibility that a "loss payee" would be adversely affected by a policy cancellation by undertaking to give the "loss payee" notice of an impending cancellation: "But, **we** have the right to cancel this policy as provided by its terms, and the cancellation shall terminate this agreement with respect to the loss payee's interest. When **we** cancel, **we** will give ten days' notice of cancellation to

the loss payee." (Bolding in original.) **"We"** is, of course, Acuity. Significantly, Acuity's obligation to pay the "loss payee" was limited to the "Car Damage Coverage" part of the policy. (Uppercasing omitted.)

¶ 10. Bruchert and her parents (Nancy and Jerry Bruchert) sued, among others, Acuity, seeking to recover under the liability part of the Acuity policy issued to Monfre that insured the Galant leased from Mitsubishi Motors Credit by Major League Sports. Acuity sought summary judgment dismissing the Brucherts' claims against it, contending that it had lawfully cancelled the policy before the accident. Tokio Marine & Nichido Fire Insurance Company, Ltd., Mitsubishi Motors Credit's insurer, opposed the motion. The dispute on this appeal is between Acuity and Tokio Marine.

¶ 11. As we have seen, the trial court denied Acuity's motion for summary judgment, and, in a written decision, ruled that the policy term "loss payee" was ambiguous, and, interpreting the ambiguity in favor of coverage, held that Acuity had to give notice of cancellation to Mitsubishi Motors Credit, and, because Acuity did not give that notice, the policy as a whole (not restricted to the "Car Damage Coverage" part) remained in effect and thus provided liability coverage to Erickson in connection with Laura Bruchert's injuries. (Uppercasing omitted.) We reverse.

## II.

¶ 12. Our review of a trial court's grant of summary judgment is *de novo*. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). Additionally, unless there are factual disputes, application of insurance policies and their

provisions is a legal issue that we also review *de novo*. *Smith v. Katz*, 226 Wis. 2d 798, 805, 595 N.W.2d 345, 349 (1999). Insurance policies, like other contracts, are applied consistent with the parties' intent.

> Insurance contracts are controlled by the same rules of construction as are applied to other contracts. The goal of construction is to ascertain the true intentions of the parties to the insurance contract. In the case of an insurance contract, the words are to be construed in accordance with the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of an insured would have understood the words to mean. Ambiguities in coverage are to be construed in favor of coverage, while exclusions are narrowly construed against the insurer.

*Kaun v. Industrial Fire & Cas. Ins. Co.*, 148 Wis. 2d 662, 668–669, 436 N.W.2d 321, 324 (1989) (citations omitted). Although policy language must be construed against the insurance company if that language is ambiguous, we will not find coverage when an insured or former insured is not entitled to it. *United States Fid. & Guar. Co. v. PBC Prods., Inc.*, 153 Wis. 2d 638, 641, 451 N.W.2d 778, 779 (Ct. App. 1989) ("We may not, however, rewrite a policy to provide coverage where there is none."). Rather, an insurance-contract provision that is clear must be applied as it stands. *Duncan v. Ehrhard*, 158 Wis. 2d 252, 259, 461 N.W.2d 822, 825 (Ct. App. 1990). After all, insurance companies are not eleemosynary endeavors.

¶ 13.  The pertinent aspect of the Acuity policy is clear:  the policy will be cancelled if the insured does not pay the premiums. The policy and its notice-of-cancellation provisions are thus consistent with WIS. STAT. § 631.36, which permits midterm cancellation "for failure to pay a premium when due," § 631.36(2)(a), and

678

only requires "written notice to the policyholder" ten days before the proposed cancellation, § 631.36(2)(b).

¶ 14. Monfre did not pay the premiums when they were due, and he received the requisite ten-day notice before the policy was cancelled on February 7, 2002. There is nothing in the statute or the Acuity policy that requires notice to anyone else, other than to the "loss payee" in connection with the "Car Damage Coverage" only. (Uppercasing omitted.) Further, we reject Tokio Marine's essentially undeveloped argument that Acuity also had to give notice of the pending cancellation to Major League Sports, which we have seen was not designated by the policy as either the "Insured" or the "Policyholder," and, indeed, was not even listed as an "additional insured" in connection with the Galant that is the subject of this lawsuit.[2]

¶ 15. Assuming without deciding that, as the trial court ruled, Mitsubishi Motors Credit's designation as the "Lienholder" as to the Galant made it the "loss payee" under the car-damage-coverage part of the policy, and that this required Acuity to give Mitsubishi Motors Credit notice of the pending policy cancellation, failure to give that notice does not resurrect the entire

[2] As we have noted, the Acuity policy, issued to Monfre that insured the Galant covered by the lease agreement between Mitsubishi Motors Credit and Major League Sports, covered four cars, including another Galant, designated in the policy as a "MITSUBISHI GALANT DE 4DR" with the vehicle identification number "4A3AAU6G72E039586." (Uppercasing in original.) Major League Sports is listed as an "Additional Insured" in connection with that car. The Galant that was covered by the lease agreement, however, is designated by the policy as a "MITSUBISHI GALANT 4DR" with the vehicle identification number "4A3AA6G22E058367." (Uppercasing in original.) Major League Sports is *not* listed by the policy as an "Additional Insured" in connection with that car.

policy, including the liability parts. *See Nutter v. Milwaukee Ins. Co.*, 167 Wis. 2d 449, 456, 481 N.W.2d 701, 704 (Ct. App. 1992) (rejecting argument that notice-of-cancellation provisions applicable to one part of a policy are also "equally applicable to all coverage provided in the policy").

¶ 16. When Monfre did not timely pay the premium on the Acuity policy, and also ignored the notice-of-proposed-cancellation, he, and those whose derivative liability coverage flowed through him—here, Erickson in connection with the Bruchert accident—lost that liability coverage. In the language of *Nutter*, having let the policy be cancelled despite the requisite notice to him, Monfre "voluntarily joined the ranks of motorists in Wisconsin who elect to drive without the protection of automobile insurance." *Id.*, 167 Wis. 2d at 457, 481 N.W.2d at 705. Whatever the situation might be with any claim that Mitsubishi Motors Credit might have against Acuity in connection with Mitsubishi Motors Credit's designation as a "Lienholder" under the "Car Damage Coverage" part of the policy, or that Mitsubishi Motors Credit might have against Major League Sports, Monfre, or Erickson as a result of its lease agreement with Major League Sports, Acuity's failure to give Mitsubishi Motors Credit notice of the pending policy cancellation does not negate Acuity's proper cancellation of Monfre's *liability* coverage in connection with the Galant. Accordingly, we reverse.

*By the Court.*—Order reversed.