The Farmers Automobile Insurance Association,
Plaintiff,

v.

Union Pacific Railway Company,
Defendant.

Joseph P. Donaubauer,
Plaintiff-Appellant,†

v.

The Farmers Automobile Insurance Association,
Defendant-Respondent,

Union Pacific Railroad Company,
Defendant.

Court of Appeals

*No. 2007AP1992. Submitted on briefs May 6, 2008.
—Decided June 3, 2008.*

2008 WI App 116

(Also reported in 756 N.W.2d 461.)

† Petition to review granted 12/9/08. Oral argument April 16, 2009.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *John V. McCoy* and *Chad R. Levanetz* of *McCoy & Hofbauer, S.C.*, Waukesha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Monte E. Weiss* and *Charles W. Kramer* of *Deutch & Weiss, LLC*, Milwaukee.

Before Curley, P.J., Wedemeyer and Fine, JJ.

¶ 1. FINE, J. Joseph P. Donaubauer appeals orders dismissing on summary judgment his claims against The Farmers Automobile Insurance Association, his home insurer. He contends that the circuit court erred in: (1) not relieving him from his agreement to submit his dispute with Farmers to the insurance policy's appraisal process; (2) not allowing him to depose the appraisers and a consultant hired by them; (3) refusing to vacate or modify the appraisal valuation; (4) dismissing his bad-faith claim against Farmers; and (5) dismissing his breach-of-contract claim against Farmers. He also argues that the circuit court's grant of summary judgment unlawfully deprived him of his

right to a jury trial and that the circuit court denied him due process by not allowing him discovery on his bad-faith claim. We affirm.

## I.

¶ 2. Donaubauer owned a house that was totally destroyed by a fire triggered by one of the Union Pacific Railroad Company's trains on April 15, 2003. The railroad is not a party to this appeal. Farmers paid some $530,000 in fire-loss claims to Donaubauer. Donaubauer's Farmers policy had a Home-Guard-replacement-value endorsement, and Donaubauer made an additional claim to cover what he asserted was his home's replacement cost. The endorsement reads, as material:

> "Replacement value" means the current cost at time of loss, without deduction for depreciation, to replace the damaged, destroyed or stolen property with articles of like kind and quality.
>
> . . . .
>
> We will not be liable for any loss under this endorsement until actual repair or replacement is completed.

When Farmers would not pay upfront what Donaubauer wanted, he started this lawsuit on April 12, 2004, alleging breach of contract, bad faith, as well as some claims that are not pursued on this appeal, because the insurance company would not pay what Donaubauer asserted was the "actual replacement value of the home," which the complaint alleged "exceeds $553,000." Subsequently, by letter dated March 22, 2005, Farmers purported to invoke the policy's appraisal process, which provides, as material:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each

101

party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire . . . . The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Farmers's March 22, 2005, letter was sent by its lawyer to Donaubauer's lawyer, and asserted that Donaubauer's lawsuit against Farmers "is in violation of the policy conditions." The letter quoted the policy's appraisal clause, and told Donaubauer's lawyer: "As I am sure your Client is aware, in the event that there is a dispute as to the amount of the loss, your Client has an obligation to seek resolution by appraisal." Farmers does not dispute that the appraisal clause did not *require* either it or Donaubauer to seek an appraisal-resolution of the dispute. The letter also said:

In the event that your Client disagrees with The Farmers Automobile Insurance Association's analysis of the amount of loss as set forth herein, then it hereby demands appraisal as the agreed upon mechanism to resolve the dispute.

. . . .

If you or your Client disagrees with the analysis set forth herein, please let me know, in writing, the legal and factual basis for the disagreement.

Farmers's letter named its appraiser.

¶ 3. On March 25, 2005, Donaubauer's lawyer sent a facsimile letter to Farmers's counsel asking for a tolling of the appraisal clause's twenty-day response

period because Donaubauer had just had "very serious heart surgery." Farmers agreed to the delay.

¶ 4. By letter dated May 12, 2005, to Donaubauer's lawyer, Farmers's counsel recounted their telephone conversation that day, noting that Donaubauer "has agreed to the appraisal process." In a response the next day, Donaubauer's lawyer "confirm[ed] that Mr. Donaubauer is willing to fulfill his contractual obligations and participate in the appraisal that your client has requested." Donaubauer's lawyer repeated that in a letter to Farmers's counsel dated June 1, 2005: "Please be advised that Joe Donaubauer is able to participate in the appraisal process per your client's request." By letter dated June 27, 2005, Donaubauer's lawyer identified the appraiser Donaubauer had chosen.

¶ 5. Donaubauer later had a change of heart, and in a letter dated September 29, 2005, his lawyer wrote to Farmers's counsel that although Donaubauer "is willing to continue forward with the appraisal process," that willingness was now conditioned on it "not being conducted pursuant to the insurance contract," and only "as long as it is considered a part of the mediation process and is not binding in any way." The letter asked Farmers's counsel to "advise if your client agrees with the above conditions." Farmers did not agree.

¶ 6. Farmers asked the circuit court to enforce Donaubauer's agreement to use the appraisal process. During the hearing on that motion, Donaubauer's lawyer acknowledged that Donaubauer had agreed to use the appraisal process but that the lawyer later discovered a case, *Lynch v. American Family Mutual Insurance Co.*, 163 Wis. 2d 1003, 1008, 473 N.W.2d 515, 517 (Ct. App. 1991) ("[A]bsent a policy provision to the contrary, an insurance company may not demand an

appraisal of a loss after the commencement of an action by the insured on that loss when the insurance company failed to demand the appraisal prior to the lawsuit even though it had an opportunity to do so."), that he contended would have led Donaubauer to not agree to the appraisal process because Donaubauer had already sued Farmers.[1] The circuit court granted Farmers's motion to enforce the appraisal-process agreement.

¶ 7. On September 8, 2006, the appraisers unanimously determined both the "actual cash value" of Donaubauer's destroyed property at $248,579.68, and its "full replacement cost" at $396,260.75. (Initial capitalization omitted.) The circuit court denied Donaubauer's motion to modify or vacate the appraisal award, and prevented Donaubauer from deposing the appraisers and a consultant hired by the appraisers. The circuit court also granted summary judgment to Farmers dismissing Donaubauer's breach-of-contract and bad-faith claims.

## II.

■

¶ 8. We review *de novo* a circuit court's grant of summary judgment. *Green Spring Farms v. Kersten*,

---

[1] The colloquy between the circuit court and Donaubauer's lawyer is instructive:

> THE COURT: So there has been an agreement in writing to resolve this case; is that a correct statement?
>
> . . . .
>
> [Donaubauer's lawyer]: Yes.
>
> . . . .
>
> THE COURT: So there is a written agreement then. And what you're seeking basically, and at this point, to set aside that agreement then?
>
> [Donaubauer's lawyer]: Yes.

136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). We also ascertain *de novo* the meaning of insurance-contract clauses, as well as the meaning of contracts generally. *Rebernick v. Wausau Gen. Ins. Co.*, 2005 WI App 15, ¶ 5, 278 Wis. 2d 461, 466, 692 N.W.2d 348, 351, *aff'd*, 2006 WI 27, 289 Wis. 2d 324, 711 N.W.2d 621; *Teacher Ret. Sys. of Texas v. Badger XVI Ltd. P'ship*, 205 Wis. 2d 532, 555, 556 N.W.2d 415, 424 (Ct. App. 1996).

¶ 9. Summary judgment must be granted if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." WIS. STAT. RULE 802.08(2). Thus, we disregard facts about which there may be a dispute when those facts are not material to the issue. Further, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial," RULE 802.08(3), and has the burden to show the facts that establish the elements on which that party has the burden of proof at trial, *Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 290–291, 507 N.W.2d 136, 139 (Ct. App. 1993). We address the issues presented by this appeal in turn.

A. *Appraisal.*

¶ 10. Donaubauer makes essentially two arguments in connection with the appraisal issue. First, he argues that he never agreed to the appraisal process, and "[e]ven if" he did, he only agreed to "a non-binding appraisal." Second, he contends that there was a "mutual mistake of law" as to whether Farmers could in light of *Lynch* legitimately request an appraisal after Donaubauer filed this lawsuit.

¶ 11. As we have seen, Donaubauer not only initially agreed to the appraisal process requested by Farmers but also named his appraiser. It is traditional to say that an agreement is made when there is a "meeting of the minds." *Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 178, 557 N.W.2d 67, 75 (1996). "Yet, this does not mean that parties must subjectively agree to the same interpretation at the time of contracting. Instead, mutual assent is judged by an objective standard, looking to the express words the parties used in the contract." *Ibid.* As the circuit court recognized, the exchange of letters in connection with the appraisal process not only objectively reflects an agreement to use the process, but, indeed, the subjective intent by both parties is also revealed by the fact that they both named their respective appraisers. Further, as we have seen, Donaubauer's lawyer at the hearing on Farmers's motion to enforce the agreement conceded that there was, in fact, an agreement. Additionally, Donaubauer's lawyer made the same concession at one of the hearings on Farmers's motion for summary judgment when he asserted that "[o]riginally we agreed to it." Wanting to back out of an agreement, or to transform a process that would, as phrased in the insurance contract's appraisal clause, "set the amount of loss" into one that would be advisory only, does not mean that the agreement to use the policy's appraisal process was not made. The circuit court correctly determined that Farmers and Donaubauer agreed to the appraisal process that was ultimately implemented.

¶ 12. In connection with Donaubauer's mistake-of-law contention, he argues that had his lawyers known of *Lynch* before he agreed to Farmers's request

for a valuation appraisal under the policy he might not have agreed. Although a mistake as to the legal effect of an agreement might in appropriate cases justify relief from that agreement, *Shearer v. Pringle*, 203 Wis. 164, 168–172, 233 N.W. 623, 625–626 (1930), we are not aware of any authority that permits a party to withdraw from an agreement based on that party's ignorance of case law that might have affected a decision whether to enter into that agreement. A rule that allowed a party to undo an agreement based on what was discovered during post-agreement legal research would make all agreements hostage to agreement-remorse. Further, insofar as Donaubauer contends that he and his lawyer were misled by the assertion in the March 22, 2005, letter from Farmers's counsel that said that the policy required Donaubauer to resort to the appraisal process, merely reading the clause would have put them straight—as we have seen, its clear language did no such thing.

■■■

¶ 13. In any event, whether to relieve a party from an agreement is within the circuit court's discretion. *Id.*, 203 Wis. at 172, 233 N.W. at 626 (" 'misapprehension of the law does create a basis for the interference of courts of equity, resting on discretion and to be exercised only in the most unquestionable and flagrant cases' ") (quoted source omitted); *Phone Partners Ltd. P 'ship v. C.F. Commc'ns Corp.*, 196 Wis. 2d 702, 709–710, 542 N.W.2d 159, 161 (Ct. App. 1995). As the circuit court cogently recognized, Donaubauer was free to "agree to something that [Farmers was no]t entitled to" demand. Insofar as Donaubauer argues that he was misled by Farmers's request for an appraisal pursuant to the insurance policy because that request, he contends, falsely represented that Farmers was entitled to

seek an appraisal even though Donaubauer had already filed suit, Donaubauer's lawyers could have discovered the decision with a modicum of effort. *See Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 19, 283 Wis. 2d 555, 573, 699 N.W.2d 205, 213 (There is no disclosure-requirement in an intentional-misrepresentation case unless "one party exclusively holds knowledge of facts material to the transaction that the other party has no means of acquiring."). When Donaubauer got Farmers's purported invocation of the appraisal process he could have easily rejected it and sought relief in this action, which was already pending. He did not. The circuit court did not erroneously exercise its discretion in denying Donaubauer's request to be relieved of his agreement to have the valuation dispute resolved by the appraisal process set out in the insurance policy.

B. *Discovery.*

¶ 14. Donaubauer does not contend that the appraisal process was infected by either fraud or bad faith. Rather, he alleges that the valuation was tainted by what he contends were misunderstandings and lack of specificity underlying some of the appraisers' assumptions. In support of his attempt to depose the appraisers and the consultant they hired, Donaubauer presented to the circuit court some of the communications between the appraisers and ten questions his appraiser asked him about his house as well as Donaubauer's answers. The communications reflect a normal deliberative process, and, as we show below, are not sufficient to warrant vacatur of the appraisers' valuation. Thus, as we also explain, the circuit court correctly prevented Donaubauer from pursuing discovery. First, a little background.

¶ 15. *Lynch* explained the function of the appraisal process in the insurance-policy context:

> Although the words "appraisal" and "arbitration" are occasionally used interchangeably, there is a distinction between the two terms. Specifically:
>
>> An agreement for arbitration, as that term is now generally used, encompasses the disposition of the entire controversy between the parties upon which award a judgment may be entered, whereas an agreement for an appraisal extends merely to the resolution of the specific issues of actual cash value and the amount of loss, all other issues being reserved for settlement by negotiation, or litigated in an ordinary action upon the policy.
>
> Generally, and unless the parties' contract provides to the contrary, an arbitration panel is given quasi-judicial responsibilities, while appraisers are charged with "ascertainment of facts . . ., which requires neither hearing nor the exercise of judicial discretion."

*Id.*, 163 Wis. 2d at 1009–1010, 473 N.W.2d at 517–518 (citations omitted; ellipses in *Lynch*). As the circuit court recognized, however, there are essential similarities between formal arbitration, which in Wisconsin is governed by Wis. Stat. ch. 788, and appraisal, which is a less-formal method of resolving valuation disputes, both of which are specifically permitted to be in insurance contracts subject to Wisconsin law. Wis. Stat. § 631.85 ("An insurance policy may contain provision for independent appraisal and compulsory arbitration, subject to the provisions of s. 631.20.").[2] Thus, as the circuit court opined:

---

[2] Wisconsin Stat. § 631.20 deals with the approval of insurance contracts by Wisconsin's Commissioner of Insurance.

> [T]he appraisal process is a means of alternate dispute resolution. It is designed to effectively and cost[-]efficiently resolve disputes over the amount of an insured's loss. By doing it this way you avoid all of the difficulties that you encounter in litigation with all of our procedural rules, our evidentiary rules. It is less[-]formal than a court proceeding, yet it is designed to give finality.

Like arbitrators governed by ch. 788, appraisers are thus decision-makers outside of the formal judicial process. Accordingly, it is appropriate to look to how discovery is handled in connection with arbitration because the two methods of dispute-resolution are analogous and there is no direct law on whether someone dissatisfied with an appraisal under a clause authorized by § 631.85 may depose the appraisers and those consultants from whom the appraisers may have sought guidance. *See Fahy v. Fahy*, 630 A.2d 1328, 1332–1333 (Conn. 1993) (recognizing that statutes may illumine analogous common-law principles).

¶ 16. As noted, formal arbitration in Wisconsin is governed by Wis. Stat. ch. 788. *See* Wis. Stat. § 788.01. The grounds for vacating an arbitration award are exceedingly narrow:

> **(1)** In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:
>
> (a) Where the award was procured by corruption, fraud or undue means;
>
> (b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;
>
> (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient

110

cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

WIS. STAT. § 788.10(1). As noted, Donaubauer does not even allege that any of the matters encompassed by § 788.10(1)(a)–(c) are present in this case. *See Diversified Mgmt. Servs., Inc. v. Slotten*, 119 Wis. 2d 441, 447, 351 N.W.2d 176, 179–180 (Ct. App. 1984) (Preliminary analyses, even if unfavorable to the party dissatisfied with the arbitration award, do not establish "evident` partiality."). Further, insofar as § 788.10(1)(d) is concerned, *Dechant v. Globe & Rutgers Fire Insurance Co.*, 194 Wis. 579, 217 N.W. 322 (1928), which involved appraisal and upon which Donaubauer relies, is instructive.

¶ 17. The dispute in *Dechant* involved a car that was destroyed by fire. *Id.*, 194 Wis. at 580, 217 N.W. at 322. The owner paid $1,735 for the car, accessories, and what the opinion calls "repairs." *Ibid.* The appraisers were given evidence that the car when it was destroyed was worth between $900 and $1,000. *Ibid.* Afterward, the appraisers went to the manufacturer's showroom and, as phrased by *Dechant*, "examined price lists and cars of that make." *Ibid.* The appraisers with one dissent valued the car at the time of loss at $350. *Ibid.* The car owner then sued, and, hearing "evidence as to its value in varying amounts from $300 to $950 and $1,100, the jury found its value and consequent damage at $750." *Id.*, 194 Wis. at 580–581, 217 N.W. at 322.

111

Although recognizing that the difference between the $350 found by the appraisers and the $750 awarded by the jury was (in that era) "quite substantial" and that $750 was "the nearer to plaintiff's actual loss," *ibid.*, *Dechant* upheld the appraisers' valuation because: (1) "appraisals are not to be lightly set aside"; and (2) "[t]here was here no substantial failure by the appraisers to appreciate the matter and questions before them." *Id.*, 194 Wis. at 582, 217 N.W. at 323. Although, similar to the plaintiff's contention in *Dechant*, Donaubauer asserts that the appraisers did not consider all of the evidence and drew false inferences from the evidence they did consider, there is no showing beyond rhetoric, that the appraisers did not, as phrased by *Dechant*, "appreciate the matter and questions before them." Indeed, their communications in the Record show conclusively that they did.

¶ 18. *Koepke v. E. Liethen Grain Co.*, 205 Wis. 75, 77–78, 236 N.W. 544, 545 (1931), a decision antedating the effective date of "The Wisconsin Arbitration Act," found in Wis. Stat. ch. 788, June 19, 1931, Wis. Stat. §§ 788.17 & 788.18, explained the broad berth given to arbitrators, which is congruent with the leeway *Dechant* recognized applies to appraisers:

> Contentions such as that the arbitrators misconceived the real issue as to responsibility for an item of damage, or that they failed to duly regard the technical legal requirements as to satisfying the burden of proof, or otherwise decided an issue contrary to law or the technically relevant or competent evidence, do not warrant vacating their award.
>
> . . . .
>
> Likewise, the award is not necessarily fatally defective because the arbitrators failed to find as to fourteen

of the thirty-one items of damages asserted by the respondent. The latter may have been prejudiced, and might have complained because of that failure. As the arbitrators, after the submission of all of respondent's thirty-one items, finally concluded in their award that the net amount owing to appellants was $1,725.49, the issues relating to the fourteen items, as to which no allowance to respondent was made in the award, are deemed decided adversely to respondent. Even if the omission to find as to those items was due to a mistake on the part of the arbitrators, nevertheless the omission was in effect a disallowance of those items, which became final and conclusive when the award was made and proper notice thereof was given to the interested parties.

*Koepke*, 205 Wis. at 78–80, 236 N.W. at 545–546.

■■■■

¶ 19. The significance of all this to the "discovery" issue is that absent a showing of some species of fraud, arbitrators may not impeach their awards. *Id.*, 205 Wis. at 78, 236 N.W. at 545 ("In subsequent proceedings to impeach their award, their testimony as to what transpired in their hearing and deliberations will not be received for that purpose."); *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 701–702 (2d Cir. 1978) (Absent a *prima facie* showing of a species of fraud, a party unhappy with an arbitration award may not seek discovery from arbitrators.). As recognized by the rule that prohibits jurors to impeach their verdicts, Wis. Stat. Rule 906.06, deliberative processes of judicial and quasi-judicial bodies must be impervious to intrusion and examination. Accordingly, the circuit court did not err in not allowing Donaubauer to depose either the appraisers or their consultant merely because Donaubauer is unhappy with the weight given by the appraisers to the various aspects of his home.

C. *Vacatur or modification of appraisal valuation.*

¶ 20. Donaubauer complains that the circuit court erred in refusing to either vacate the appraisal valuation or modify it. He complains that there were discrepancies between what he contends the appraisers should have included in the valuation and what they did include. Confusing the issue was that the consultant retained by the appraisers presented to Donaubauer a proposal as to what his company could build based on the replacement-value determined by the appraisers, and apparently that house was some six-hundred square feet smaller than was Donaubauer's home and also differed from his home in other respects. The appraisers' report, however, does not reference that proposal; rather, it gives what they unanimously determined to be the replacement value of Donaubauer's home.

¶ 21. Significantly, as the circuit court recognized, the pertinent clause in the Home-Guard endorsement promises that Farmers will pay for the home's "replacement value," which, as we have already seen, only requires that the "replacement" be "of like kind and quality"—plank-by-plank, brick-by-brick, fixture-by-fixture, or window-by-window congruence is not required. As the circuit court expressed it: "Mr. Dona[u]bauer is not entitled to have duplicated here, under replacement costs, a home identical to the home that he had before." Indeed, Donaubauer's lawyer at the hearing the circuit court held on the issue of whether the appraisers' replacement-value determination should be vacated or modified agreed with the circuit court's assessment that Donaubauer was only entitled "to something that is reasonably comparable."

¶ 22. As we have already seen, appraisers and arbitrators are given great leeway in using their expertise in fulfilling their responsibilities. *See Dechant*, 194 Wis. at 582, 217 N.W. at 323; *Koepke*, 205 Wis. at 78–80, 236 N.W. at 545–546. The circuit court did not err in refusing to either vacate or modify the appraisers' replacement-value determination.

D. *Bad-faith claim.*

¶ 23. Donaubauer complains that the circuit court improperly granted summary judgment dismissing his bad-faith claim against Farmers. The essence of his contention on appeal is that Farmers improperly rejected Donaubauer's submissions as to what he asserted was his home's replacement value.

¶ 24. As we have seen, Donaubauer's house was destroyed on April 15, 2003. By letter dated June 23, 2003, Farmers calculated that Donaubauer's house could be rebuilt "with equivalent construction" for $380,819.38 and offered that amount as the Home-Guard-endorsement valuation. When Donaubauer turned that down, Farmers upped its offer to $471,000. Donaubauer ultimately demanded a replacement valuation of $720,309 and repeats that requested valuation in his reply brief on this appeal.

¶ 25. An insured has a bad-faith action against his or her insurer when the insurer unjustly refuses to honor the insured's claim. *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 687–694, 271 N.W.2d 368, 374–377 (1978). "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or

reckless disregard of the lack of a reasonable basis for denying the claim." *Id.*, 85 Wis. 2d at 691, 271 N.W.2d at 376. "An insurer will have committed the tort of bad faith only when it has denied a claim without a reasonable basis for doing so, that is, when the claim is not fairly debatable." *Mowry v. Badger State Mut. Cas. Co.*, 129 Wis. 2d 496, 516, 385 N.W.2d 171, 180 (1986). The assessment of whether there is or is not a reasonable basis to reject a claim is an objective analysis. *Anderson*, 85 Wis. 2d at 692, 271 N.W.2d at 377; *see also Samuels Recycling Co. v. CNA Ins. Cos.*, 223 Wis. 2d 233, 248, 588 N.W.2d 385, 391 (Ct. App. 1998).

■

¶ 26. Although Donaubauer recognizes that under *Transportation Insurance*, the party resisting summary judgment has the burden to set forth specific facts to establish the elements on which that party would have the burden of proof at trial, he contends that the circuit court improperly deprived him of his right to attempt to establish those facts by granting summary judgment without first allowing him to take discovery under Wis. Stat. Rule 802.08(4) ("Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the motion for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."). A prerequisite to discovery in a bad-faith case is, however, some evidence that what the insurance company did was objectively unreasonable because there is no claim for bad faith if it was not. This is where, as the circuit court recognized, Donaubauer's bad-faith claim falters.

¶ 27. First, as the circuit court indicated during one of the many hearings in this matter, Farmers had paid $530,000 to Donaubauer under the policy, apart from the dispute over the Home-Guard endorsement. Second, as we have seen, Farmers offered to settle the replacement-value dispute by offering Donaubauer an amount that was only slightly less than that unanimously set by the appraisers, and, when Donaubauer rejected that offer, increased it by some $90,000. Donaubauer also rejected that. As the circuit court correctly determined, under no sense of the words does this history reflect objective unreasonableness.

¶ 28. Undoubtedly, Donaubauer would love to scour through Farmers's files in an attempt to find some dirt. Indeed, his lawyer told the circuit court as much during the hearing on Farmers's motion for summary judgment on the bad-faith claim: "Mr. Donaubauer went to The Farmers Insurance Company and said this is what I believe my house is worth. Based on the fact that they disagreed with him, he should have an opportunity to take a look at exactly why is it that Farmers disagreed with him." But absent an objectively unreasonable response to an insured's offer of settlement, we are left with a mere legitimate disagreement, which, as we have seen, is not enough to state a cause of action on the objective aspect of a bad-faith claim. *See Mowry*, 129 Wis. 2d at 516, 385 N.W.2d at 180. Accordingly, the circuit court quite appropriately granted summary judgment to Farmers on Donaubauer's bad-faith claim without permitting Donaubauer to rummage through Farmers's files because irrespective of what Donaubauer may have found, Farmers's response to Donaubauer's replacement-value position was objectively reasonable.

E. *Breach-of-contract claim.*

¶ 29. Donaubauer argues that Farmers breached its insurance contract with him because it would not pay him the replacement value until he completed the building of a replacement house. Quoting from the Home-Guard endorsement, he says that he only has to *agree* to rebuild, not actually rebuild. The circuit court rejected that contention and so do we on our *de novo* review.

¶ 30. "Our goal in interpreting insurance contracts is to discern and give effect to the intent of the parties." *Folkman v. Quamme*, 2003 WI 116, ¶ 16, 264 Wis. 2d 617, 632, 665 N.W.2d 857, 865. Thus, we apply insurance-policy language in a way that a " 'reasonable person in the position of the insured would have understood the words to mean.' " *Id.*, 2003 WI 116, ¶ 17, 264 Wis. 2d at 632, 665 N.W.2d at 865 (quoted source omitted). Absent an ambiguity, we apply the words as they are written. *Id.*, 2003 WI 116, ¶ 13, 264 Wis. 2d at 631, 665 N.W.2d at 864.

¶ 31. The material part of the clause upon which Donaubauer relies follows that part of the Home-Guard endorsement where Farmers says that:

> For an additional premium, we agree to the following changes:
>
> . . . .
>
> We will:
>
> 1. Increase the Coverage [for the dwelling] limit of liability to equal the current replacement cost of the dwelling . . . [with a proviso that is not material];

2. [sets out other coverages that will also be increased];

3. [says that the premium will be adjusted] from the time of loss for the remainder of the policy term.

Immediately under the "We will" clauses is the following:

You agree to:

1. Insure the dwelling to 100% of its replacement cost as determined by us.

2. Accept any renewal adjustments by us of Coverage [for the dwelling] reflecting changes in the cost of construction for the area.

3. Notify us, within 30 days of completion, of any alterations to the dwelling which increase the replacement cost of the dwelling by 5% or more; and

4. Repair or replace the damaged dwelling with equivalent construction and use on the same premises.

It is number 4 upon which Donaubauer hangs his hat to argue that he only has to "agree" to replace his home, not actually do it. This contention, however, ignores the clear unambiguous language of *when* Farmers will have to *pay* the replacement value. As we have seen, that clause provides: "We will not be liable for any loss under this endorsement until actual repair or replacement is completed." Thus, although Donaubauer will have to "agree" to replace his home, Farmers will not have to pay for that replacement until the "replacement is completed." These two clauses work in tandem—there is no ambiguity and there is no conflict.

¶ 32. Donaubauer also contends that the rebuild-first clause is unconscionable. "Unconscionability is an amorphous concept that evades precise definition." *Wis-*

119

*consin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 31, 290 Wis. 2d 514, 532, 714 N.W.2d 155, 164. Thus, "[a] determination of unconscionability requires a mixture of both procedural and substantive unconscionability that is analyzed on a case-by-case basis." *Id.*, 2006 WI 53, ¶ 33, 290 Wis. 2d at 533, 714 N.W.2d at 165.

> Substantive unconscionability refers to whether the terms of a contract are unreasonably favorable to the more powerful party. The analysis of substantive unconscionability requires looking at the contract terms and determining whether the terms are "commercially reasonable," that is, whether the terms lie outside the limits of what is reasonable or acceptable.

*Id.*, 2006 WI 53, ¶ 36, 290 Wis. 2d at 536, 714 N.W.2d at 166 (footnotes omitted). "Determining whether procedural unconscionability exists requires examining factors that bear upon the formation of the contract, that is, whether there was a 'real and voluntary meeting of the minds' of the contracting parties." *Id.*, 2006 WI 53, ¶ 34, 290 Wis. 2d at 534, 714 N.W.2d at 165 (footnote omitted).

■

¶ 33. The Home-Guard clause that provides that Farmers need not pay for the replacement of a home until "replacement is completed" is neither substantively nor procedurally unconscionable.

■

¶ 34. First, forms relating to "all insurance policies . . . delivered or issued for delivery in this state, on property ordinarily located in this state," WIS. STAT. § 631.01(1), may not be used unless they have "been filed with and approved by the commissioner [of insurance]," with exceptions that do not apply here, WIS. STAT. § 631.20(1). Under § 631.20(2), "[t]he commis-

sioner may disapprove a form upon a finding: (a) [t]hat it is inequitable," and, as we have seen, WIS. STAT. § 631.85, which permits insurance policies to "contain provision for independent appraisal," specifically makes those provisions "subject to the provisions of s. 631.20." We may affirm a decision by a circuit court for reasons other than those relied on by that court even if they were not argued by the parties. *State v. Bembenek*, 2006 WI App 198, ¶ 10, 296 Wis. 2d 422, 430, 724 N.W.2d 685, 688. That the Home-Guard-endorsement clause passed Commission-of-Insurance muster is a factor negating a contention that the clause is either substantively or procedurally unconscionable.

¶ 35. Second, it is perfectly commercially reasonable for the insurance policy to provide that the company will not have to pay for a home's replacement cost until that replacement is complete. Indeed, paying a replacement cost without ensuring that the insured actually used the money to replace his or her home would tend to induce some insureds to take the money and run, and would be commercially *un*reasonable. As noted by *Travelers Indemnity Co. v. Armstrong*, 442 N.E.2d 349, 353 (Ind. 1982):

> The cost of repair may exceed the fair market value of the building, and in the case of very old or obsolescent buildings, the difference may be very substantial. To permit recovery of the cost of repair, without also requiring the repairs to be made usually provides an even greater windfall than is provided when repairs are made. In effect the insured sells his building not at its market value but at a much higher figure and for cash.

¶ 36. Third, there is nothing in the Record that Donaubauer has been prejudiced by the build-first requirement. Indeed, his lawyer told the circuit court during the pendancy of this action that they needed a

*value* to take to the bank in order to secure a re-building loan: "Until we know what [Farmers] is willing to pay we can't go to a bank and say we want to build this home." Donaubauer now has the value, albeit not the one he wants. Indeed, as we have already noted, Donaubauer *still* asserts that he is entitled to $720,309 under the Home-Guard endorsement. This is how he puts it in his reply brief on this appeal: "In essence, $396,260.75 cannot, no matter how creatively the building is designed, replace a house that had been estimated at $720,309.00."

¶ 37. As for procedural unconscionability, there is nothing in the Record that shows that Donaubauer's agreement to the Home-Guard endorsement and its build-first clause was anything but a voluntary decision by him. Rather, his dispute is, again, with the valuation. Thus, in his brief on appeal in support of his procedural-unconscionability argument, Donaubauer writes that at the time he bought the policy he "could never have anticipated that The Farmers would refuse every good faith offer put forth." As we have seen, however, Farmers actually offered Donaubauer *more* than the appraisers determined was the correct replacement value for his home. Insurance companies, as with all businesses, are not, as we have previously noted, "eleemosynary endeavors," nor should they be. *Bruchert v. Tokio Marine & Nichido Fire Ins. Co.*, 2007 WI App 156, ¶ 12, 303 Wis. 2d 671, 678, 736 N.W.2d 234, 238.

¶ 38. Finally, although Donaubauer points to a two-to-one decision by an intermediate-appellate court in Pennsylvania, *Ferguson v. Lakeland Mutual Insurance Co.*, 596 A.2d 883 (Pa. Super. Ct. 1991), that held a similar clause to be unconscionable, *Ferguson* is neither precedent nor, in our view in light of our analysis, persuasive.

122

F. *Alleged denial of Donaubauer's constitutional rights.*

¶ 39. Donaubauer argues that the circuit court's grant of summary judgment denied him his constitutional right to a jury trial. This is a frivolous contention; the constitutional preservations of the right to a jury trial do not prevent the grant of summary judgment when there are no genuine issues of material fact that require a trial. *Steven V. v. Kelley H.*, 2004 WI 47, ¶ 35 n.3, 271 Wis. 2d 1, 20–21 n.3, 678 N.W.2d 856, 865 n.3 ("[N]o case has ever held that the . . . summary judgment procedure violates the state constitutional jury trial right."). Although the Seventh Amendment jury-trial right does not apply to the states, *Minneapolis & St. Louis R.R. Co. v. Bombolis*, 241 U.S. 211, 217 (1916), the rule in the federal system is the same: "It is firmly established that the granting of a motion for summary judgment or directed verdict in an appropriate case does not infringe upon the right to trial by jury." *King v. United Benefit Fire Ins. Co.*, 377 F.2d 728, 731 (10th Cir. 1967). In light of this, Donaubauer's real complaint appears to be that he believes that the circuit court erred in applying the summary-judgment criteria. We have already held that it did not.

¶ 40. Donaubauer's contention that he was denied due process because the circuit court prevented him from pursuing discovery on his bad-faith claim is similarly without merit. "To simply label an alleged procedural error as a constitutional want of due process does not make it so." *State v. Schlise*, 86 Wis. 2d 26, 29, 271 N.W.2d 619, 620 (1978). As we have already explained, Donaubauer has not established the requisite threshold

of an objectively unreasonable denial of his proffered replacement values. Thus, as we have already indicated, his bad-faith claim against Farmers is blocked at the threshold and discovery would not remove the block because by its very definition an objective standard does not depend on subjective motivations.

*By the Court.*—Orders affirmed.