Louis G. Ullerich and Marie Ullerich,
Plaintiffs-Appellants,

Michael Leavitt, Secretary of the United States
Department of Health and Human Services,
Involuntary-Plaintiff,

v.

Sentry Insurance,
Defendant-Third-Party Plaintiff-Respondent,

Richard E. Goergen,
Defendant-Third-Party Plaintiff,

United Healthcare Services, Defendant,

Kathryn Saffold, Travelers Property and
Casualty Company of America, US Investigations
Services, Inc. and US Investigations Services,
LLC, d/b/a USIS Investigations Services,
Third-PartyDefendants.

Court of Appeals

*No. 2011AP2875. Submitted on briefs July 30, 2012.
—Decided October 23, 2012.*

2012 WI App 127

(Also reported in 824 N.W.2d 876.)

708

 ██

On behalf of the plaintiff-appellant, *Louis G. Ullerich*, the cause was submitted on the briefs of *Geoffrey D. Wilber* of *Gruber Law Offices, LLC*, Milwaukee.

On behalf of the defendant-third party plaintiff-respondent, the cause was submitted on the brief of *Lawrance J. Drabot* of *Crivello Carlson, S.C.*, Milwaukee.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. Decided This case addresses what an insured must plead in order to proceed with discovery and survive summary judgment in a first-party bad faith and breach of contract action against an insurer. Louis Ullerich filed bad faith and breach of contract claims against his insurer, Sentry Insurance, for refusing to pay him $250,000, the policy limit set forth in the uninsured motorist ("UM") endorsement in Ullerich's automobile insurance policy. The trial court dismissed both of Ullerich's claims, granting Sentry's motion to quash discovery and for summary judgment. Ullerich argues that the trial court erred when it dismissed his first-party bad faith claim by imposing the pleading requirements of *Brethorst v. Allstate Property and Casualty Insurance Co.*, 2011 WI 41, 334 Wis. 2d 23, 798 N.W.2d 467, and that under *Anderson v. Continental Insurance Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978), he pled sufficient allegations to survive summary judgment and warrant discovery on that claim.

¶ 2. We conclude that under both *Brethorst* and *Anderson*, as well as *The Farmers Automobile Insurance Ass'n v. Union Pacific Railway Co.*, 2008 WI App 116, 313 Wis. 2d 93, 756 N.W.2d 461, an insured must

demonstrate *some evidence* that the insurer's denial of coverage was unreasonable in order to proceed to discovery on a first-party bad faith claim. *See Anderson,* 85 Wis. 2d at 691–92; *Farmers,* 313 Wis. 2d 93, ¶ 26. Stated differently, the insured must plead facts that show the coverage claim "was not fairly debatable." *Brethorst,* 334 Wis. 2d 23, ¶¶ 76, 81. Here, because Ullerich's allegations show that his coverage claim was fairly debatable, Sentry's denial of coverage was not unreasonable. Accordingly, we affirm.

## BACKGROUND

¶ 3. Sentry issued an automobile insurance policy to Ullerich, which included an UM endorsement. The policy states, in relevant part:

**Our Promise to You**

We promise to pay damages, excluding punitive or exemplary damages, the owner or operator of an uninsured motor vehicle is legally obligated to pay because of bodily injury you suffer in a car accident while occupying a car or, as a pedestrian, as a result of having been struck by an uninsured motor vehicle.

(Emphasis omitted.)

¶ 4. In November 2007, Ullerich was a passenger in an uninsured motor vehicle operated by Richard Goergen, which was involved in an intersection collision with a vehicle operated by Kathryn Saffold. Goergen and Saffold each claimed to have the right-of-way.

¶ 5. Ullerich began experiencing shoulder pain two weeks after the motor vehicle accident, and his primary physician referred him to Dr. Amy Franta, an orthopedic surgeon. In a January 11, 2008 letter from Dr. Franta to Ullerich's primary physician, Dr. Franta noted that:

711

> The patient is unsure of exactly why he began having pain. He thinks that it could be related to shoveling or it could be related to a [motor vehicle accident] that he had on 11–21–07. ... The patient did not have shoulder pain immediately after the accident, but it developed a week or 2 later.

After detailing her examination of Ullerich, Dr. Franta wrote: "I suspect that [the injury] i[s] related to the recurrent shoveling he has had to do. Another possibility is a contusion from his [motor vehicle accident], although, this is less likely." Later, in a March 17, 2009 letter to Ullerich's attorney, Dr. Franta stated that "[i]t is difficult to say whether [Ullerich's] injury was specifically caused by the motor vehicle accident. However, I think you can make a case[.]"

¶ 6. After Saffold's insurer denied Ullerich's claim, Ullerich made a UM claim to Sentry in a March 23, 2009 letter.[1] In the letter, drafted by Ullerich's attorney, Ullerich demanded $250,000, the maximum amount permitted under the policy, and asserted that he had accumulated $51,658.05 in past medical bills related to the motor vehicle accident.

¶ 7. Sentry responded, in a letter dated March 26, 2009, that it was not certain it was obligated to pay Ullerich the maximum under the terms of the UM endorsement because: (1) the reports from Ullerich's treating physician, Dr. Franta, indicated that Ullerich's injuries may have been related to recurrent snow shoveling rather than the motor vehicle accident; and (2) Sentry's investigation revealed that there was evidence that Saffold may have caused the motor vehicle accident when she ran a red light, putting the extent of Goergen's liability, if any, in question. Sentry agreed,

[1] The letter is erroneously dated March 23, 2008.

however, that Ullerich likely suffered some injury as a result of the accident and offered to settle the matter for $22,685.51.

¶ 8. Ullerich rejected Sentry's offer and commenced this lawsuit against Sentry and Goergen. The complaint, in which Ullerich's wife, Marie, was also a named plaintiff, included a claim against Goergen for negligence, and claims against Sentry for breach of contract, pursuant to WIS. STAT. § 628.46 (2009–10), and bad faith.[2] The trial court bifurcated Ullerich's contract and bad faith claims against Sentry from his negligence claim against Goergen, and the claims against Sentry were stayed.

¶ 9. On August 19, 2009, Sentry filed a third-party complaint against Saffold as the driver of the other vehicle. On June 25, 2010, Ullerich filed an amended complaint, adding Saffold as a defendant,[3] and adding a claim for Marie's alleged loss of Ullerich's society and companionship.

¶ 10. Ullerich and Marie tried their personal injury claims against Goergen and Saffold before a jury in June 2011. The jury found both Goergen and Saffold liable for Ullerich's injuries, and apportioned liability

[2] The complaint named several other parties whose interests are irrelevant on appeal.

All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted. The parties do not suggest that there have been any relevant changes in the applicable statutes during any time relevant to this case, so we cite the current version for ease of reference.

[3] The amended complaint also added Saffold's employer and numerous insurers as defendants, alleging that Saffold was acting within the course and scope of her employment when the motor vehicle accident occurred. The interests of those parties are not relevant to the issues raised on appeal.

equally between the two, awarding Ullerich a total of $87,077.70 in damages: $50,577.70 for past medical expenses and $36,500 for past pain, suffering, and disability. The jury rejected Marie's claim for the loss of Ullerich's society and companionship.

¶ 11. Ullerich then proceeded with his contract and bad faith claims against Sentry, asserting that Sentry did not make a good faith effort to evaluate and settle his UM claim. Sentry filed a motion to quash discovery and for summary judgment. Following briefing and oral argument, the trial court, relying upon *Brethorst*, issued a written decision granting Sentry's motion. Ullerich appeals from that order, arguing that the trial court erred in relying on *Brethorst* when it dismissed his bad faith claim; Ullerich does not appeal from the trial court's decision to dismiss his contract claim against Sentry.

## DISCUSSION

¶ 12. Ullerich argues that: (1) the trial court erroneously relied on *Brethorst* when it prohibited discovery and dismissed Ullerich's first-party bad faith claim on summary judgment; and (2) under *Anderson*, he is entitled to discovery and a trial on his first-party bad faith claim. Essentially, Ullerich contends that because *Brethorst*'s factual and procedural history differ from his case—the insured in *Brethorst* filed only a first-party bad faith claim while Ullerich filed both breach of contract and first-party bad faith claims—the Wisconsin Supreme Court's pleading requirements for discovery in *Brethorst* do not apply to his claim. Sentry argues that even though the insured in *Brethorst* pled only a first-party bad faith claim, as opposed to both contract and first-party bad faith claims like Ullerich, *Brethorst* accurately expresses the test for cases where

714

both breach of contract and bad faith are claimed, namely, that the insured must allege "some evidence" that the insurer's denial was not reasonable. We agree with Sentry.

**I. To state a first-party bad faith claim and survive summary judgment, an insured must allege facts showing that there was no reasonable basis for the coverage denial, or stated differently, the insured must show that coverage was not fairly debatable.**

▮

¶ 13. Ullerich first argues that the trial court erred in applying the pleading standard set forth in *Brethorst* to his first-party bad faith claim when it granted Sentry's motions to quash discovery and for summary judgment. Whether the trial court applied the proper legal standard is a question of law we review *de novo. Sands v. Whitnall Sch. Dist.*, 2008 WI 89, ¶ 13, 312 Wis. 2d 1, 754 N.W.2d 439.

¶ 14. The Wisconsin Supreme Court first recognized the tort of bad faith in the context of a first-party claim in *Anderson. Id.*, 85 Wis. 2d at 680. In *Anderson*, an insured brought a first-party claim for bad faith against his insurer, along with a claim for breach of contract. *Id.* at 682. The supreme court, in reversing the trial court's dismissal of the complaint, set forth the pleading requirements for a first-party bad faith claim: "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* at 691. Here, the parties only argue over whether the pleadings show "the absence of a reasonable basis for denying benefits." *See id.* The

715

court noted in *Anderson* that the tort of first-party bad faith is an intentional one, and that an insurer can rebut the allegations by showing that the coverage is "fairly debatable." *See id.* at 691–92.

¶ 15. Subsequently, in *Dahmen v. American Family Mutual Insurance Co.*, 2001 WI App 198, 247 Wis. 2d 541, 635 N.W.2d 1, we addressed discovery-related concerns in bad faith/breach of contract cases. We held that where the insured filed a claim of breach of contract with a claim of bad faith against his insurer, the trial court erred by not granting the insurer's motion to bifurcate the claims and stay discovery on the first-party bad faith claim until the breach of contract claim was resolved. *Id.*, ¶ 20. We reasoned that permitting discovery relevant to the bad faith claim would risk prejudice to the insurer on the breach of contract claim because there would be disclosure of work product and attorney-client material under the bad faith discovery. *Id.*, ¶¶ 13, 16. We noted that this privileged information would not be available to an insured if he or she was proceeding solely on a breach of contract claim. *Id.*, ¶ 13. In light of those concerns, we reversed the trial court and remanded for a stay of the bad faith claim while the breach of contract claim proceeded. *Id.*, ¶ 20.

¶ 16. We directly addressed discovery pleading requirements for first-party bad faith claims in *Farmers*. There, we held that before discovery would be permitted in a first-party bad faith case, the insured must allege "some evidence that what the insurance company did was objectively unreasonable." *Id.*, 313 Wis. 2d 93, ¶ 26. In *Farmers*, the insured brought both bad faith and breach of contract claims against his insurer. *Id.*, ¶ 2. Unlike the insurer in *Dahmen*, the insurer in *Farmers* did not seek to bifurcate the claims and to stay the bad faith claim, but rather, argued that

716

the insured failed to plead facts showing that the coverage denial was unreasonable. *See Dahmen*, 247 Wis. 2d 541, ¶ 1; *see generally Farmers*, 313 Wis. 2d 93, ¶¶ 7, 28. The trial court granted the insurer's motion for summary judgment, concluding: "A prerequisite to discovery in a bad-faith case is . . . some evidence that what the insurance company did was objectively unreasonable because there is no claim for bad faith if it was not." *Farmers*, 313 Wis. 2d 93, ¶ 26.

¶ 17. The insured in *Farmers* appealed arguing, as Ullerich argues here, that the circuit court improperly deprived him of his right to attempt to establish those facts by granting summary judgment without first allowing him to take discovery under Wis. Stat. Rule 802.08(4).[4] *See Farmers*, 313 Wis. 2d 93, ¶ 26. As we did in *Dahmen, see id.*, 247 Wis. 2d 541, ¶ 16, we noted in *Farmers* that an insurer faces potential prejudice when an insured is permitted discovery on a bad faith claim without a showing of evidence supporting a breach of contract/coverage claim:

> Undoubtedly, [the insured] would love to scour through [the insurer's] files in an attempt to find some dirt. Indeed, his lawyer told the circuit court as much during the hearing on [the insurer's] motion for summary judgment on the bad-faith claim: "[The insured] went to [the insurer] and said this is what I believe my house is worth. Based on the fact that they disagreed with him, he should have an opportunity to take a look

---

[4] Wisconsin Stat. Rule 802.08(4) states:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the motion for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

at exactly why is it that [the insurer] disagreed with him." But absent an objectively unreasonable response to an insured's offer of settlement, we are left with a mere legitimate disagreement, which, . . . is not enough to state a cause of action on the objective aspect of a bad-faith claim.

*Id.*, 313 Wis. 2d 93, ¶ 28.

¶ 18. More recently, in *Brethorst*, the Wisconsin Supreme Court addressed, for the first time, the pleading requirements of a first-party bad faith claim, in a case where no accompanying breach of contract claim was filed. *Id.*, 334 Wis. 2d 23, ¶ 51 ("The present case is the first to come before this court in which the insured has initiated a bad faith claim without filing any accompanying claim for breach of contract. Thus, this case is not covered by our longstanding law, and it requires additional analysis."). The supreme court concluded after analyzing the tort of bad faith "that some breach of contract by an insurer is a fundamental prerequisite for a first-party bad faith claim against the insurer by the insured." *Id.*, ¶ 65.

¶ 19. The supreme court then turned its attention to the presenting issue in *Brethorst*: " 'Whether a finding of wrongful denial of benefits is a condition precedent to proceeding with discovery in a first-party bad faith claim based on wrongful denial of benefits?' " *Id.*, ¶ 71. The court found that this question had already been answered in the affirmative in *Dahmen. Brethorst*, 334 Wis. 2d 23, ¶ 72 ("If the procedural facts in this case were the same as the procedural facts in *Dahmen*, the answer would appear to be 'yes.' "). In other words, the court in *Brethorst* stated that *Dahmen* required a finding of wrongful denial of benefits as a condition precedent to proceeding with discovery in a first-party bad faith claim case. *See Brethorst*, 334 Wis. 2d 23, ¶ 72.

¶ 20. In *Brethorst*, where there was no breach of contract claim, the supreme court went on to hold that considering the policies articulated in *Dahmen*, namely, the potential for prejudice to insurers from allowing discovery of work product and attorney-client privileged materials on the bad faith claim, the insured claiming bad faith must plead a separate breach of contract (not an issue here) and

> satisf[y] the court that the insured has established such a breach or will be able to prove such a breach in the future. Stated differently, an insured must plead, in part, that she was entitled to payment under the insurance contract and allege facts to show that her claim under the contract was not fairly debatable. To go forward in discovery, these allegations must withstand the insurer's rebuttal.

*Brethorst*, 334 Wis. 2d 23, ¶ 76. The absence of this preliminary showing is grounds for summary judgment for the insurer. *Id.*, ¶ 79.

¶ 21. Ullerich argues that the preliminary-showing holding in *Brethorst* applies only to cases where the insured only pleads bad faith. And it is true that that is the procedural posture of *Brethorst*. However, Ullerich ignores the fact that the supreme court specifically stated that the preliminary showing of bad faith is also required when a breach of contract is pled as well, stating: "The need to make a preliminary showing on bad faith applies even more to a claimed breach of contract. The court must be satisfied that the claimed breach of contract is well founded and can be proved in the future." *See id.*, ¶ 81. As a basis for its ruling, the *Brethorst* court expressly acknowledged the policies protecting insurers from unfair discovery in *Dahmen, see Brethorst*, 334 Wis. 2d 23, ¶ 5, and cited *Farmers*, noting that our holding in *Farmers* requires

" 'some evidence that what the insurance company did was objectively unreasonable' " before discovery can proceed in a bad faith case, *see Brethorst*, 334 Wis. 2d 23, ¶ 80 (citing *Farmers*, 313 Wis. 2d 93, ¶ 26). The supreme court further noted that it had affirmed our decision in *Farmers*, saying "that if the insured 'shows prima facie evidence of a reviewable claim . . . discovery is potentially available.' " *Brethorst*, 334 Wis. 2d 23, ¶ 80 (citing *Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co.*, 2009 WI 73, ¶ 52, 319 Wis. 2d 52, 768 N.W.2d 596; ellipses in *Brethorst*).

¶ 22. So, contrary to Ullerich's contentions, *Brethorst*, although factually and procedurally different, is applicable and instructive on the issue appealed here, namely, the pleading requirements in a first-party bad faith/breach of contract case. The supreme court relied on procedurally identical first-party bad faith/breach of contract cases and adopted the same discovery pleading requirements, to wit, some evidence that the insurer's denial of coverage was unreasonable, or stated differently, that coverage was not fairly debatable. *See Brethorst*, 334 Wis. 2d 23, ¶¶ 76, 81; *Anderson*, 85 Wis. 2d at 691–92; *Farmers*, 313 Wis. 2d 93, ¶ 26.

## II. Applying *Brethorst* to Ullerich's first-party bad faith claim against Sentry, we conclude that the trial court properly prohibited discovery and dismissed the claim on summary judgment.

¶ 23. We review the trial court's decision to grant Sentry's motion for summary judgment independently, using the same method as the trial court. *See Pinter v. American Family Mut. Ins. Co.*, 2000 WI 75, ¶ 12, 236

Wis. 2d 137, 613 N.W.2d 110. A party is entitled to summary judgment when there are no disputed issues of material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). Here, the underlying facts are undisputed and the question is whether those facts are sufficient to permit Ullerich to proceed with his first-party bad faith claim.

¶ 24. As we have seen, in order to proceed with discovery and survive summary judgment on a first-party bad faith claim against an insurer, an insured must plead:

> a breach of contract by the insurer as part of a separate bad faith claim and satisf[y] the court that the insured has established such a breach or will be able to prove such a breach in the future. Stated differently, *an insured must plead, in part, that [he or] she was entitled to payment under the insurance contract and allege facts to show that [his or] her claim under the contract was not fairly debatable.* To go forward in discovery, *these allegations must withstand the insurer's rebuttal.*
>
> The insurer, in turn, must be permitted to challenge the elements of the claim, not only by a responsive pleading, but also by motion. It must be permitted to show that it did not breach the contract or that there was a reasonable basis for its conduct in denying, paying, or processing a claim.
>
> . . . .
>
> A plaintiff's failure to make this preliminary showing would be grounds for the court to grant a motion for summary judgment under WIS. STAT. § 802.08(2).

*Brethorst*, 334 Wis. 2d 23, ¶¶ 76–79 (*Brethorst*'s emphasis and internal citation omitted; italics added). Here, the allegations in Ullerich's complaint do not

stand up to rebuttal. The undisputed facts show that his UM claim was fairly debatable because: (1) it was reasonable for Sentry to conclude that Ullerich's shoulder injury was not caused by the motor vehicle accident but rather by recurrent snow shoveling; and (2) it was reasonable to question the extent of Goergen's liability for the accident. *See id.*

A. *Whether Ullerich's shoulder injury was caused by the motor vehicle accident was fairly debatable.*

■

¶ 25. Ullerich argues that because, at the time Sentry denied Ullerich's UM claim, Sentry had before it Dr. Franta's March 17, 2009 letter to Ullerich's attorney and other unidentified "accompanying medical records," Sentry's failure to acknowledge that the motor vehicle accident caused Ullerich's injury was unreasonable. Ullerich is mistaken.

¶ 26. First, Ullerich falsely asserts that Dr. Franta, in her March 17, 2009 letter to Ullerich's attorney, set forth "her final opinion, given to a reasonable degree of medical certainty, that Mr. Ullerich's rotator cuff tear *was* a result of the motor vehicle accident." (Emphasis added.) Dr. Franta explicitly states in the letter that "[i]t is difficult to say whether this injury was specifically caused by the motor vehicle accident. However, I think you can make a case[.]" In other words, Ullerich's own treating physician, Dr. Franta, implicitly suggests that the cause of Ullerich's injury is "fairly debatable," as the ability only "to make a case" suggests that there are other reasonable hypotheses regarding how the injury occurred. *See Brethorst*, 334 Wis. 2d 23, ¶ 76.

¶ 27. Second, while Ullerich argues that Sentry failed to consider the "accompanying medical records

from Mr. Ullerich's visits with Dr. Franta," he fails to identify those records or to explain to us what in those records made it unreasonable for Sentry to conclude that the motor vehicle accident may not have caused his shoulder injury. " '[W]e decline to embark on our own search of the record, unguided by references and citations to specific testimony, to look for . . . evidence to support" ' Ullerich's argument. *See Mogged v. Mogged*, 2000 WI App 39, ¶ 19, 233 Wis. 2d 90, 607 N.W.2d 662 (citation omitted; alterations in *Mogged*).[5]

¶ 28. In addition to Dr. Franta's March 17, 2009 letter, Sentry explicitly states that it relied upon Dr. Franta's January 11, 2008 letter to Ullerich's primary physician when partially denying his UM claim. That letter also supports Sentry's position that whether Ullerich's injury was caused by the motor vehicle accident was fairly debatable. *See Brethorst*, 334 Wis. 2d 23, ¶ 76.

¶ 29. In the January 11, 2008 letter, Dr. Franta notes that Ullerich himself

> is unsure of exactly why he began having pain. He thinks that it could be related to shoveling or it could be related to a [motor vehicle accident] that he had on 11–21–07. . . . [Ullerich] did not have shoulder pain immediately after the accident, but it developed a week or 2 later.

Dr. Franta also states that Ullerich "previously had problems in the right shoulder, initially, dating back to 1996," well before the motor vehicle accident, and that

[5] We also note that in its letter partially denying Ullerich's claim, Sentry asked Ullerich: "Is there a possibility we are still missing medical records between 9/18/07 and 11/20/07?" Ullerich does not tell us whether he responded to Sentry's inquiry.

she "suspect[ed] that [the injury] i[s] related to the recurrent shoveling he has had to do. Another possibility is a contusion from his [motor vehicle accident], although, this is less likely." Dr. Franta's suggestion that something other than the motor vehicle accident—recurrent shoveling—was the cause of Ullerich's injury, supports Sentry's position that the cause of the injury was fairly debatable. *See id.*

¶ 30. Ullerich emphasizes in his brief that Dr. Franta testified during her deposition, to a reasonable degree of medical certainty, that the cause of Ullerich's shoulder injury was the motor vehicle accident. In so arguing, Ullerich seems to lose sight of what he is claiming. His claim is for bad faith. Dr. Franta's testimony at her May 2011 deposition, years after Sentry partially denied Ullerich's claim, that she now believes that the cause of Ullerich's shoulder injury was the motor vehicle accident, is irrelevant. The question raised by Ullerich's claim is whether, at the time Sentry partially denied his claim, the cause of his injury was fairly debatable. As Dr. Franta's January 11, 2008 and March 17, 2009 letters show, at the time Sentry partially denied Ullerich's claim in March 26, 2009, the cause of the injury was fairly debatable.

B. *The extent of Goergen's liability for the motor vehicle accident was fairly debatable.*

¶ 31. Ullerich also argues that the only reasonable inference from the facts is that Goergen, the uninsured driver, was negligent in his operation of the motor vehicle because he did not see what was plainly in sight, that is, Saffold's vehicle simultaneously entering the intersection. *See Briggs Transfer Co. v. Farmers Mut. Auto. Ins. Co.*, 265 Wis. 369, 372, 61 N.W.2d 305 (1953) ("where a driver did not see what was plainly in

724

sight his negligence is one of lookout"). As such, Ullerich essentially contends that because Goergen was undeniably liable to some extent for the motor vehicle accident that caused Ullerich's injuries, it was unreasonable for Sentry to deny Ullerich his demand for his medical expenses and to instead only offer to settle his claims for $22,685.51. We disagree.

¶ 32. The UM endorsement did not require Sentry to pay Ullerich the $250,000 policy limit or Ullerich's medical bills if an uninsured motorist caused Ullerich injury. Rather, the endorsement only required Sentry "to pay damages, excluding punitive or exemplary damages, the owner or operator of an uninsured motor vehicle is legally obligated to pay." (Emphasis omitted.) Even if we assume, without deciding, that Goergen's negligence undeniably played *a* role in the motor vehicle accident, that does not mean that it was unreasonable for Sentry to deny Ullerich's demand for $250,000, or even to deny his demand for $51,658.05 in past medical bills, because at that time it was reasonable for Sentry to conclude that Saffold may have been primarily liable. The jury's verdict, apportioning liability equally between Saffold and Goergen, conclusively proves that Ullerich was not entitled to all that he demanded from Sentry, and that, at the very least, the extent of Goergen's liability was fairly debatable.

*By the Court.*—Order affirmed.