COURT OF APPEALS
DECISION
DATED AND FILED

May 30, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP429**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CV1607

**IN COURT OF APPEALS
DISTRICT IV**

ADAM SCHMIDT,

PLAINTIFF-APPELLANT-CROSS-RESPONDENT,

V.

ERIE INSURANCE EXCHANGE,

DEFENDANT-RESPONDENT-CROSS-APPELLANT.

APPEAL and CROSS-APPEAL from a judgment of the circuit court for Dane County: JACOB B. FROST, Judge. *Affirmed in part, reversed in part and remanded for further proceedings*.

Before Blanchard, Graham, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Adam Schmidt was injured as a result of a vehicle collision with another driver. At the time, Schmidt carried an insurance policy ("the Policy") with Erie Insurance Exchange ("Erie"). Erie eventually paid Schmidt's claims stemming from the collision pursuant to the Policy's underinsured motorist ("UIM") coverage, medical expenses coverage, and property damage coverage. Schmidt subsequently sued Erie for both breach of contract and bad faith in its handling of his claims under these portions of the Policy. Before Schmidt could be allowed to move the case to the discovery phase on these causes of action, the circuit court granted summary judgment in favor of Schmidt for breach of contract regarding the property damage coverage, but granted summary judgment in favor of Erie on all of Schmidt's other causes of action and did not permit discovery on any of Schmidt's bad faith causes of action.

¶2 With respect to Schmidt's UIM coverage and medical expenses claims, we conclude that, under the terms of the Policy as interpreted under Wisconsin case law and applied to the undisputed facts here, Erie did not breach the Policy or exercise bad faith. We therefore affirm the circuit court's summary judgment decision in favor of Erie on these causes of action.

¶3 With respect to Schmidt's property damage claim, we conclude that there is no genuine issue of material fact that Erie lacked reasonable proof that it was not responsible for paying for a deductible, and therefore Schmidt is entitled to summary judgment on the breach of contract cause of action. Further, we conclude that Schmidt has made a sufficient "preliminary showing" to entitle him to discovery on his bad faith cause of action concerning his property damage claim pursuant to *Brethorst v. Allstate Property & Casualty Insurance Co.*, 2011 WI 41, ¶79, 334 Wis. 2d 23, 798 N.W.2d 467. Accordingly, we reverse the circuit court's grant of summary judgment in favor of Erie on Schmidt's bad faith cause

of action concerning property damage and remand for further proceedings on that cause of action consistent with this opinion.

## BACKGROUND

¶4      There is no dispute as to the following material facts.

¶5      On May 27, 2020, Schmidt was involved in a vehicle collision with Jane Kwiatkowski. Kwiatkowski was insured by two different companies, West Bend Mutual Insurance Company ("West Bend") and USAA Casualty Insurance Company ("USAA"). Kwiatkowski's total liability limit under these two policies was $200,000. Schmidt was insured by Erie, which provided the following coverages under the Policy pertinent to this appeal: $500,000 of UIM coverage per accident; $10,000 of coverage for medical expenses; and coverage for property damage with a $1,000 deductible.

¶6      As a result of the collision, Schmidt incurred $13,309.90 in property damage to his vehicle. On June 26, 2020, 30 days after the collision, Erie paid Schmidt for the full amount of property damage, minus the $1,000 deductible. After paying Schmidt, Erie asked West Bend to subrogate the full amount of property damage, including the deductible. On November 2, 2020, Schmidt's lawyer asked Erie about reimbursement for the deductible, and Erie followed up with West Bend that same day. Two weeks later, West Bend paid Erie for the full amount of Schmidt's property damage, and Erie paid Schmidt $1,000 for his deductible the next day.

¶7      Schmidt suffered a dislocated and fractured left pinky finger as a result of the collision. Erie paid Schmidt $8,466.97 pursuant to the Policy's medical expenses coverage. In a letter accompanying the payment, Erie wrote in

3

relevant part: "This payment is being advanced on the express condition that all liens, reimbursement and subrogation claims against this advancement will be satisfied out of these proceeds."

¶8    In March 2021, Schmidt filed a lawsuit against Kwiatkowski and her insurers, which also named Erie as a defendant.  Several weeks before the May 2022 jury trial on the matter, Schmidt offered to settle with Erie for $300,000, the full UIM coverage limit that would remain under Schmidt's Policy assuming that Kwiatkowski's $200,000 policy limit was paid.  Erie declined the offer, explaining that it disputed the damages for Schmidt's "pain and suffering" and that it was not obligated to pay UIM coverage until Kwiatkowski's $200,000 policy limit was exhausted.  On the first day of trial, the parties stipulated that Schmidt incurred $10,880 in medical expenses and suffered $25,000 in lost wages. The only issues for the jury were past and future pain and suffering.

¶9    During closing arguments, Erie's counsel and counsel for Kwiatkowski and her insurer asked the jury to award Schmidt $20,000 to $30,000 in damages for pain and suffering.  Schmidt requested $900,000 in damages for pain and suffering.  The jury ultimately awarded Schmidt $500,000 in damages for pain and suffering, and returned a total verdict of $535,880.  In early June 2022, Kwiatkowski's insurers paid Schmidt the full $200,000 policy limit, and Erie paid Schmidt the full $300,000 limit for UIM coverage under the Policy.

¶10    At the end of June 2022, Schmidt sued Erie for both breach of contract and bad faith in its handling of Schmidt's claims under the Policy in three respects: (1) Erie's failure to pay the $300,000 UIM coverage limit prior to the trial; (2) Erie's requirement that Schmidt use the medical expenses payment to pay "all liens, reimbursement and subrogation claims"; and (3) Erie's subtraction of

the deductible from its property damage payment. Before discovery commenced on these causes of action, Schmidt moved for partial summary judgment on his breach of contract causes of action. Erie moved for summary judgment on all of Schmidt's causes of action.

¶11 The circuit court granted summary judgment in favor of Erie with respect to Schmidt's UIM coverage and medical expenses claims, concluding that, based on the undisputed facts, Erie did not breach the contract in either respect, a necessary element in Schmidt's bad faith causes of action. With respect to Schmidt's property damage claim concerning the $1,000 deductible payment, the court granted summary judgment in favor of Schmidt on his breach of contract cause of action, but granted summary judgment in favor of Erie on Schmidt's bad faith cause of action. The court awarded Schmidt $29.38 in interest for Erie's improper subtraction of the deductible from the property damage payment. Schmidt and Erie both appeal portions of the court's judgment.

## DISCUSSION

¶12 In his appeal, Schmidt argues that the circuit court erred in granting summary judgment in Erie's favor because Erie breached its contractual obligations under the Policy and acted in bad faith in connection with its handling of his UIM, medical expenses, and property damage claims. In its cross-appeal, Erie argues that the court improperly granted summary judgment in Schmidt's favor on his property damage breach of contract cause of action.[1]

---

[1] Neither party's briefing complies with WIS. STAT. RULE 809.19(8)(bm) (2023-24), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). This rule has recently been amended, *see* S. CT. ORDER 20-07, 2021 WI 37,

(continued)

¶13 We reach the following conclusions. With respect to Schmidt's UIM and medical expenses claims, under the terms of the Policy as interpreted under Wisconsin case law and applied to the undisputed facts here, Schmidt cannot show that Erie breached its obligation under the Policy as to either claim. Because breach of contract is a necessary element of a bad faith cause of action, we affirm the circuit court's grant of summary judgment in favor of Erie on all of Schmidt's causes of action regarding his UIM and medical expenses claims. With respect to Schmidt's property damage claim, we conclude that there is no genuine issue of material fact that Erie lacked reasonable proof that it was not responsible for paying for a deductible, and therefore Schmidt is entitled to summary judgment on the breach of contract cause of action. Further, we conclude that Schmidt is entitled to discovery on his bad faith cause of action based on the undisputed facts.

## I. Standard of Review

¶14 "We review the disposition of a motion for summary judgment de novo, applying the same methodology the circuit courts apply." *Springer v. Nohl Elec. Prods. Corp.*, 2018 WI 48, ¶9, 381 Wis. 2d 438, 912 N.W.2d 1. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

397 Wis. 2d xiii (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for efiling. As our supreme court explained when it amended the rule, the new pagination requirements ensure that the numbers on each page of a brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. Supreme Court Note, 2021, RULE 809.19.

All references to the Wisconsin Statutes are to the 2023-24 version.

genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law." *Id.*, ¶11 (quoting WIS. STAT. § 802.08(2)). When, as here, there are no disputed material facts, we must determine whether the moving party is entitled to judgment as a matter of law. *Delmore v. American Fam. Mut. Ins. Co.*, 118 Wis. 2d 510, 512-13, 348 N.W.2d 151 (1984).

¶15 This case also requires us to interpret the language of the Policy. Insurance policies are interpreted like other contracts, and we "give effect to the intent of the parties as expressed in the language of the policy." *Folkman v. Quamme*, 2003 WI 116, ¶12, 264 Wis. 2d 617, 665 N.W.2d 857. If the language of an insurance policy is unambiguous, we apply the language according to that unambiguous meaning. *Id.*, ¶13. The interpretation of an insurance policy is a question of law that we review de novo. *Id.*, ¶12.

## II.  Governing Principles of Bad Faith Causes of Action

¶16 A bad faith cause of action is a tort action that is separate and distinct from a breach of contract cause of action. *Brethorst*, 334 Wis. 2d 23, ¶25. A breach of contract occurs when an insurer "fail[s] to pay the claim in accordance with the policy," but a bad faith cause of action arises from a breach of the "duty of good faith and fair dealing" that is implied in every contract. *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 686, 689, 271 N.W.2d 368 (1978). The purpose of a bad faith cause of action is to "protect against the risk that an insurance company may place its own interests above those of the insured" and to provide adequate relief when damages for breach of contract "would not fully compensate the insured for the resulting harms." *Roehl Transp., Inc. v. Liberty Mut. Ins. Co.*, 2010 WI 49, ¶50, 325 Wis. 2d 56, 784 N.W.2d 542.

¶17 To prevail on a bad faith cause of action, an insured must establish three elements by clear and convincing evidence. *Dufour v. Progressive Classic Ins. Co.*, 2016 WI 59, ¶54, 370 Wis. 2d 313, 881 N.W.2d 678; *Johnson v. American Fam. Mut. Ins. Co.*, 93 Wis. 2d 633, 645, 287 N.W.2d 729 (1980). First, the insured must show a breach of contract by the insurer, *Brethorst*, 334 Wis. 2d 23, ¶65, which, in this context, requires a "wrongful denial of benefit under the insurance contract." *Id.*, ¶56. Second, the insured must show that the insurer had no objectively "reasonable basis" to deny the insured's claim for benefits under the policy. *Id.*, ¶49. An insurer has an objectively "reasonable basis" for denying a claim if the claim is "fairly debatable." *Id.*, ¶27 (citing *Anderson*, 85 Wis. 2d at 693). Third, the insured must show that the insurer subjectively knew of or recklessly disregarded the lack of a reasonable basis to deny the claim. *Id.*, ¶49.

¶18 The scope of discovery on a bad faith cause of action is more expansive than the scope of discovery on a breach of contract cause of action. Notably, a bad faith cause of action allows the insured to discover "internal information that would otherwise be privileged," such as material protected by the work product and attorney/client privileges. *Id.*, ¶75 & n.7. Therefore, to prevent "unwarranted discovery" of such privileged material, an insurer may move to dismiss a bad faith cause of action before proceeding with discovery on the grounds that the insured has failed to make a "preliminary showing" on the first two elements of the insured's bad faith cause of action. *Id.*, ¶¶78-81. This preliminary showing prevents the insured from "scour[ing] through [the insurer's] files in an attempt to find some dirt" until the insured has provided enough evidence that the insured can succeed on a bad faith cause of action. *Farmers*

*Auto. Ins. Ass'n v. Union Pac. Ry. Co.*, 2008 WI App 116, ¶28, 313 Wis. 2d 93, 756 N.W.2d 461, *aff'd*, 2009 WI 73, 319 Wis. 2d 52, 768 N.W.2d 596.

¶19 To make a preliminary showing on a bad faith cause of action, "an insured must plead facts which, if proven, would demonstrate not only that the insurer breached its contract with the insured but also that there was no reasonable basis for not honoring the terms of the contract." *Brethorst*, 334 Wis. 2d 23, ¶78.[2] The insured's allegations also "must withstand the insurer's rebuttal"—*i.e.*, the insurer's showing "that it did not breach the contract or that there was a reasonable basis for its conduct in denying, paying, or processing a claim." *Id.*, ¶¶76-77. If the insured fails to make this preliminary showing or fails to overcome the insurer's rebuttal, the circuit court may grant summary judgment for the insurer under WIS. STAT. § 802.08(2) and prevent the insured from moving forward with the discovery phase. *Id.*, ¶¶76, 79.

¶20 We now consider whether Schmidt has shown any breaches of contract and, if so, whether Schmidt has made sufficient preliminary showings to allow the case to proceed to the discovery phase on his bad faith causes of action.

### III. Underinsured Motorist Coverage

¶21 Schmidt argues that Erie breached the Policy and acted in bad faith when it declined to accept Schmidt's $300,000 settlement offer prior to trial. For the following reasons, we conclude that the circuit court properly granted

---

[2] Although *Brethorst* involved an insured who raised a bad faith cause of action without a separate breach of contract cause of action, the "preliminary showing" required by *Brethorst* is still required when an insured raises both bad faith and breach of contract causes of action. *Ullerich v. Sentry Ins.*, 2012 WI App 127, ¶21, 344 Wis. 2d 708, 824 N.W.2d 876.

summary judgment in favor of Erie on both of these causes of action because, on the undisputed facts, Schmidt cannot show that Erie breached its contractual obligation to make UIM payments under the Policy when Erie rejected this settlement offer.

## A. Breach of Contract

¶22    In relevant part, the Policy includes the following grant of UIM coverage: "[W]e will pay damages for bodily injury that anyone we protect … is legally entitled to recover from the owner or operator of an underinsured motor vehicle."  (Emphasis and internal quotation marks omitted.)  However, the Policy provides that Erie will not make UIM payments until the underlying insurance policy limits have been exhausted: "When the accident involves underinsured motor vehicles, we will not pay until all other forms of insurance under all bodily injury liability bonds and insurance policies and self-insured plans applicable at the time of the accident have been exhausted by payment of their limits." (Emphasis and internal quotation marks omitted.)

¶23    Our supreme court addressed the meaning of nearly identical contract language in ***Danbeck v. American Family Mutual Insurance Co.***, 2001 WI 91, 245 Wis. 2d 186, 629 N.W.2d 150.  In that case, Danbeck's insurance policy required payment of UIM benefits "only after the limits of liability under any bodily injury liability bonds or policies have been exhausted by payment of judgements or settlements." *Id.*, ¶3 (emphasis omitted).  The court concluded that this language unambiguously meant that "UIM benefits are owed only when the tortfeasor's liability insurance is insufficient to cover the UIM policyholder's damages." *Id.*, ¶22.  This insufficiency does not arise "unless and until the full limits of the tortfeasor's policy are paid out."  *Id.*  Accordingly, the court

10

concluded that "the UIM carrier's duty to pay does not arise until exhaustion within the meaning of the policy has occurred." *Id.*, ¶24.

¶24 We conclude that on the undisputed facts here, the Policy's exhaustion clause, like the exhaustion clause in *Danbeck*, unambiguously means that Erie owed no duty to make UIM payments until Kwiatkowski's liability limits were exhausted. As noted, there is no dispute that Kwiatkowski was insured by both West Bend and USAA and that her total liability limit with those insurers was $200,000. There is also no dispute that this $200,000 policy limit was not exhausted until after the jury awarded Schmidt $500,000 in damages for pain and suffering. Therefore, pursuant to the unambiguous meaning of the Policy's exhaustion clause, Erie had no obligation to make UIM payments to Schmidt when Schmidt made his $300,000 settlement offer to Erie, before Kwiatkowski's $200,000 policy limit was exhausted following the jury verdict. Accordingly, we conclude that Erie did not breach its UIM contractual obligation under the Policy when it declined Schmidt's settlement offer. *See Brew City Redevelopment Grp., LLC v. Ferchill Grp.*, 2006 WI App 39, ¶11, 289 Wis. 2d 795, 714 N.W.2d 582, *aff'd*, 2006 WI 128, 297 Wis. 2d 606, 724 N.W.2d 879 (an element of a breach of contract cause of action is that the contract "creates obligations flowing from the defendant to the plaintiff").

## B. Bad Faith

¶25 As explained above, in order to proceed to discovery on his bad faith cause of action, Schmidt must make a preliminary showing that: (1) Erie breached the Policy; and (2) Erie lacked an objectively reasonable basis for denying the claim. *See Brethorst*, 334 Wis. 2d 23, ¶76. If Schmidt fails to make this preliminary showing, then his bad faith cause of action may be dismissed on

summary judgment. *See id.*, ¶79. Here, as just discussed, Schmidt has not shown that Erie breached its contractual obligation to make UIM payments because that obligation was not triggered until Kwiatkowski's liability limits were exhausted. Therefore, we conclude that the circuit court properly granted summary judgment in favor of Erie because Schmidt has failed to make a preliminary showing of bad faith in connection with Erie's handling of the UIM coverage.

¶26 Schmidt argues that Erie may still be liable for acting in bad faith "even without any contractual duty to pay." In support, Schmidt cites to our supreme court's decision in *Danner v. Auto-Owners Insurance*, 2001 WI 90, 245 Wis. 2d 49, 629 N.W.2d 159. In that case, Danner was involved in a traffic accident with Tod Kraus. *Id.*, ¶6. Danner was insured by Auto-Owners, and Danner's policy provided $300,000 in UIM coverage. *Id.*, ¶8. In May 1994, Kraus's insurer paid Danner $25,000, Kraus's policy limit. *Id.*, ¶26. In July 1995, an arbitration panel awarded Danner over $220,000 in damages, which Auto-Owners eventually paid. *Id.*, ¶36. Danner then successfully sued Auto-Owners for bad faith in connection with Auto-Owners' handling of Danner's UIM claim. *Id.*, ¶¶37-38. On appeal, our supreme court affirmed the judgment of bad faith against Auto-Owners. *Id.*, ¶40. In relevant part, the court concluded that a UIM carrier has a duty to act in good faith and fair dealing with its insured at all times, including "during the investigation, evaluation and processing of an underinsured motorist claim." *Id.*, ¶57. The court rejected Auto-Owners' argument that it had no duty to act in good faith until the arbitration award entitled Danner to payment and legally obligated Auto-Owners to pay Danner's UIM coverage. *Id.*, ¶54.

¶27 According to Schmidt, *Danner* stands for the proposition that an insurer in the position of Erie may be liable for acting in bad faith even before the jury awarded Schmidt $500,000 for pain and suffering. We disagree. As noted, in

*Danner*, Kraus's policy limits were exhausted in May 1994 when his insurer paid Danner $25,000, but Auto-Owners refused to make a UIM payment to Danner until after the arbitrators' decision in July 1995—more than 14 months after Auto-Owners' duty to make UIM payments had been triggered by the exhaustion of Kraus's underlying policy limit. *Id.*, ¶¶26, 36. In contrast, in the present case, Erie's contractual obligation to make UIM payments was not triggered until West Bend and USAA paid Kwiatkowski's underlying policy limits in full after the jury awarded Schmidt $500,000 in damages for pain and suffering. In other words, it was not the jury verdict that triggered Erie's duty to make UIM payments, but the exhaustion of West Bend and USAA's policy limits. Erie paid Schmidt the full UIM coverage limit of $300,000 shortly after Kwiatkowski's policy limits were exhausted. Therefore, *Danner* does not support Schmidt's argument that Erie is liable for acting in bad faith before its duty to make UIM payments was triggered.

¶28 Schmidt also points to a footnote in *Danbeck* to support his argument that a UIM insurer may be liable for acting in bad faith before the underlying policy limits have been exhausted. *See Danbeck*, 245 Wis. 2d 186, ¶21 n.4. In that footnote, our supreme court noted that one of the issues in *Danner* (which was decided the same day as *Danbeck*) was whether a UIM insurer acts in bad faith when it negotiates with the underlying liability insurer to settle with the tortfeasor for less than the tortfeasor's policy limit, thereby preventing the UIM exhaustion clause from being triggered. *Id.* The footnote described *Danner* as holding that "such collusive conduct on the part of a UIM carrier, undertaken to defeat a UIM insured's otherwise available UIM coverage, may give rise to a bad faith claim." *Id.*

¶29 Schmidt argues that this footnote in *Danbeck* shows that the exhaustion clause in the Policy does not preclude his bad faith cause of action.

This argument fails because the situation described in the ***Danbeck*** footnote is not present here. Schmidt did not allege in his complaint that Erie colluded with Kwiatkowski's insurers to settle with Kwiatkowski for less than her policy limits, nor does Schmidt make any such argument on appeal. Therefore, the ***Danbeck*** footnote does not alter our conclusion that Schmidt failed to make a preliminary showing on the undisputed facts that Erie breached its UIM coverage obligations under the Policy.

## IV. Medical Expenses Coverage

¶30 Next, Schmidt argues that Erie breached the Policy and acted in bad faith by restricting his use of the medical expenses payment. Specifically, Schmidt points to the following portion of a letter from Erie to his attorney:

> Enclosed is Erie's advance payment of $8,466.97 under the Medical Payments Coverage (MPC) portion of its policy, payable [to] your trust account and for the benefit of Adam Schmidt.
>
> … This payment is being advanced on the express condition that all liens, reimbursement and subrogation claims against this advancement will be satisfied out of these proceeds.
>
> Regardless of the final determination of Adam Schmidt's damages, the amount advanced will be his to keep after satisfying all liens, reimbursement and subrogation claims against those funds.

Schmidt argues that this letter breached the Policy by requiring him to pay "all liens, reimbursement and subrogation claims" before he could use the money. We are not persuaded.

¶31 The Policy provided the following coverage for medical expenses: "We will pay reasonable medical expenses when anyone we protect suffers bodily injury in an accident." (Emphasis and internal quotation marks omitted.) The

14

Policy also included the following conditions regarding Erie's payment of medical expenses: "We will not pay any person twice for the same elements of loss. …. At our option, we will pay the injured person or any party furnishing medical services. Payment to such a party will reduce the amount we owe the injured person." (Emphasis and internal quotation marks omitted.) When read together, these provisions establish that, if Erie chooses to pay medical expenses to the injured person instead of directly to the medical providers, Erie has the right to attempt to ensure that it will not have to pay those expenses again in the future. In other words, Erie may require the injured person to use the money to pay the medical expenses owed to the medical providers, which Erie did here when it directed Schmidt to use the money to pay "all liens, reimbursement and subrogation claims." Erie was seeking to ensure that it would not have to pay any of Schmidt's medical providers or health insurers "twice for the same elements of loss."

¶32 Schmidt argues that Erie's letter altered the provisions of the Policy because it "tie[d] up the money" before he could access it for his own uses. According to Schmidt, Erie's letter prevented him from using the money until he paid all of the medical providers' liens, even those that exceeded the $10,000 medical expenses coverage limit. This argument fails because the Policy obligated Erie only to pay Schmidt's "medical expenses"; it was not obligated to give Schmidt a check to use as he pleased. Indeed, Erie could have paid the medical

providers directly, and in that case, Schmidt would have never personally received any of the money.[3]

¶33    For these reasons, we conclude that the circuit court properly granted summary judgment in favor of Erie on Schmidt's breach of contract cause of action regarding the medical expenses coverage.  We also conclude that the court properly granted summary judgment in favor of Erie on Schmidt's bad faith cause of action regarding this coverage because Schmidt failed to make a preliminary showing that Erie breached the Policy.  *See* ***Brethorst***, 334 Wis. 2d 23, ¶79.

## V.  Property Damage Coverage

¶34    Schmidt argues that Erie breached the Policy and acted in bad faith when it subtracted a $1,000 deductible from its payment of Schmidt's property damage claim.  For the following reasons, we affirm summary judgment for Schmidt based on the undisputed facts because Erie breached the Policy by subtracting the deductible.  We further conclude that Schmidt has made a sufficient preliminary showing of bad faith to proceed with discovery on this issue.

### A.  Breach of Contract

¶35    As noted, the Policy provided coverage for property damage with a $1,000 deductible.  In relevant part, the Policy provides that Erie "will not subtract

---

[3] As it happens, there was a potential advantage for Schmidt in this approach, as the circuit court aptly observed.  By paying Schmidt instead of his medical providers, Erie gave Schmidt the opportunity to negotiate the liens and potentially "retain more of that payment than he would receive had Erie paid the providers directly."

the deductible" from a property damage payment—meaning that Erie will pay the full amount of property damage—if the following four conditions are satisfied:

> a. the loss to the auto we insure is greater than the deductible amount;
>
> b. the owner of the other auto has been identified;
>
> c. the owner or operator of the other auto is solely liable for the loss; and
>
> d. there is adequate property damage liability insurance which protects anyone responsible for the loss.

(Emphasis and internal quotation marks omitted.)

¶36 Additionally, the provisions of WIS. STAT. § 628.46(1) are incorporated into the Policy as a matter of law. *See **Poling v. Wisconsin Physicians Serv.**, 120 Wis. 2d 603, 612, 357 N.W.2d 293 (Ct. App. 1984).* Under this statute, if the insurer fails to pay a claim within 30 days after being provided with "written notice of the fact of a covered loss and of the amount of the loss," then the payment is considered "overdue" and accrues interest at a rate of 7.5% per year. Sec. 628.46(1). However, a payment is not overdue if the insurer "has reasonable proof to establish that the insurer is not responsible for the payment." Sec. 628.46(1). "Reasonable proof" means "information sufficient to allow a reasonable insurer to conclude that it may not be responsible for payment of a

claim." ***Dilger v. Metropolitan Prop. & Cas. Ins. Co.***, 2015 WI App 54, ¶11, 364 Wis. 2d 410, 868 N.W.2d 177.[4]

¶37    Here, the relevant facts are undisputed.    Schmidt sustained $13,309.90 in property damage to his vehicle as a result of the collision with Kwiatkowski.  As discussed above, Erie had 30 days to pay this claim under WIS. STAT. § 628.46(1) before the claim began accruing interest.  On June 26, 2020, 30 days after the collision, Erie paid Schmidt for the full amount of this damage, less the $1,000 deductible.    After paying Schmidt, Erie attempted to get subrogation from West Bend for the full amount of the property damage.  On November 2, 2020, Schmidt's attorney asked Erie about reimbursement for the deductible, and Erie followed up with West Bend about subrogation.    On November 15, West Bend paid Erie for the full amount of Schmidt's property damage, and Erie paid Schmidt $1,000 for the deductible the following day.  As a result, the only issue here is whether Erie had "reasonable proof" that it was not responsible for paying the deductible within the 30-day deadline under § 628.46(1). *See **id.***

¶38    In its cross-appeal, Erie argues that it had no obligation to pay the deductible in June 2020 because it was unable to determine at that time whether the last two conditions for paying the deductible were satisfied—*i.e.*, whether Kwiatkowski was solely liable for the loss and whether Kwiatkowski had adequate

---

[4] Ordinarily, we review the circuit court's decision regarding "reasonable proof" as a factual finding under the clearly erroneous standard. ***Dilger v. Metropolitan Prop. & Cas. Ins. Co.***, 2015 WI App 54, ¶12, 364 Wis. 2d 410, 868 N.W.2d 177.  However, when WIS. STAT. § 628.46 is the basis for a summary judgment decision (as was the case here), we independently review the circuit court's summary judgment decision. *See **Casper v. American Int'l S. Ins. Co.***, 2017 WI App 36, ¶20 n.7, 376 Wis. 2d 381, 897 N.W.2d 429 (independently reviewing an award of interest under § 628.46 on an appeal of a summary judgment decision).

property damage coverage. According to Erie, it had no way of knowing whether these conditions were satisfied until it received confirmation from West Bend in November 2020. This argument fails because Erie's lack of conclusive knowledge as to whether these conditions were satisfied, without more, is not enough to satisfy the "reasonable proof" standard under WIS. STAT. § 628.46(1). *See Kontowicz v. American Standard Ins. Co. of Wis.*, 2006 WI 48, ¶¶51-52, 290 Wis. 2d 302, 714 N.W.2d 105, *clarified on denial of reconsideration*, 2006 WI 90, 293 Wis. 2d 262, 718 N.W.2d 111 (rejecting the argument that an insurer has no obligation to pay a claim under § 628.46(1) until the amount of damages has been conclusively determined by a judgment or settlement). Rather, as explained above, Erie needed sufficient information to conclude that it might not be responsible for payment before deducting the $1,000. *See Dilger*, 364 Wis. 2d 410, ¶11. For example, in *Kontowicz*, our supreme court concluded that the insurer had "reasonable proof" that it was not responsible for payment because it had information that the insured suffered similar injuries both before and after the automobile collision at issue. *Kontowicz*, 290 Wis. 2d 302, ¶54. According to the court, this information reasonably called into question whether the insured's damages were completely attributable to the collision. *Id.*

¶39 Here, unlike the insurer in *Kontowicz*, Erie does not contend that it had information prior to its payment of the deductible on November 16, 2020, that would suggest that it was allowed to subtract the deductible from its June 26, 2020 property damage payment. For instance, Erie acknowledges that it cannot produce evidence that it possessed information that Kwiatkowski shared liability for the property damage or that Kwiatkowski lacked sufficient property damage coverage. Without the ability to produce such evidence, Erie cannot show that it had reasonable proof that it was not responsible for paying the deductible in its

19

property damage payment to Schmidt.  *See **Poling***, 120 Wis. 2d at 613 ("The only escape clause for avoidance of th[e] interest assessment is when the insurer has reasonable proof that it is not responsible for the payment.").

¶40    In sum, because Erie acknowledges that it cannot produce "reasonable proof" that it was not responsible for paying the deductible, we affirm summary judgment for Schmidt on the property damage aspect of the breach of contract cause of action because it is undisputed that Erie failed to pay the deductible within 30 days of receiving notice of Schmidt's claim.[5]

## B. Bad Faith

¶41    Next, we consider whether the circuit court properly granted summary judgment in favor of Erie on Schmidt's bad faith cause of action regarding the property damage payment.  As discussed above, Schmidt must prove three elements to succeed on his bad faith cause of action: (1) Erie breached the Policy; (2) Erie lacked an objectively "reasonable basis" for denying Schmidt's claim; and (3) Erie subjectively knew of or recklessly disregarded the lack of a reasonable basis to deny the claim.  *See **Dufour***, 370 Wis. 2d 313, ¶54.  Before proceeding to discovery on this cause of action, Schmidt must make a "preliminary showing" as to the first two elements of his bad faith cause of action. *See **Brethorst***, 334 Wis. 2d 23, ¶¶76, 79.

¶42    We conclude that Schmidt has made a sufficient preliminary showing on the first two elements of his bad faith cause of action.  First, as

---

[5] Erie does not dispute that, if it breached the Policy by subtracting the deductible, then the circuit court properly awarded Schmidt $29.38 in interest.

discussed above, Schmidt has shown that Erie breached the Policy by subtracting the deductible from its property damage payment. Second, Schmidt has shown that Erie lacked an objectively reasonable basis for subtracting the deductible. The question of whether an insurer had an objectively reasonable basis for denying a claim in the bad faith context has generally been equated with the question of reasonable proof of non-responsibility under WIS. STAT. § 628.46(1). *Kontowicz*, 290 Wis. 2d 302, ¶48.[6] As explained in our discussion of Schmidt's breach of contract cause of action regarding the $1,000 deductible, Erie lacked "reasonable proof" that it was not responsible for paying the deductible pursuant to § 628.46(1). Therefore, it follows that Erie also lacked an objectively reasonable basis for subtracting the deductible. Accordingly, we conclude that Schmidt is entitled to proceed with discovery on his bad faith cause of action regarding Erie initially subtracting the $1,000 deductible from Schmidt's property damage payment. *See Brethorst*, 334 Wis. 2d 23, ¶76.

## CONCLUSION

¶43 For the foregoing reasons, we affirm the circuit court's grant of summary judgment in favor of Erie on Schmidt's breach of contract and bad faith causes of action regarding the UIM coverage and medical expenses coverage. We also affirm the court's grant of summary judgment in favor of Schmidt on his

---

[6] Specifically, *Kontowicz* states that the question of "reasonable proof" of non-responsibility under WIS. STAT. § 628.46 has generally been equated with the question of whether the "coverage issue was fairly debatable." *Kontowicz v. American Standard Ins. Co. of Wis.*, 2006 WI 48, ¶48, 290 Wis. 2d 302, 714 N.W.2d 105, *clarified on denial of reconsideration*, 2006 WI 90, 293 Wis. 2d 262, 718 N.W.2d 111 (citation omitted). As noted above, determining whether coverage is "fairly debatable" is also a way of determining whether the insurer lacked an objectively reasonable basis for denying the claim. *Brethorst v. Allstate Property & Casualty Ins. Co.*, 2011 WI 41, ¶27, 334 Wis. 2d 23, 798 N.W.2d 467 (citing *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 693, 271 N.W.2d 368 (1978)).

property damage breach of contract cause of action. However, we reverse the court's grant of summary judgment in favor of Erie on Schmidt's property damage bad faith cause of action, and we remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment affirmed in part, reversed in part and remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.